[No. 14256.   Department One. — October 31, 1891.]

JOSEPH CAVANAUGH, RESPONDENT, v. SAMUEL JACKSON, APPELLANT.

BOUNDARY — CONTIGUOUS LOTS — DIVISION LINE — PAROL AGREEMENT — STATUTE OF FRAUDS — ESTOPPEL. — Where the owners of contiguous lots by parol agreement mutually establish a dividing line, and thereafter use and occupy their respective tracts according to it for any period of time, such agreement is not within the statute of frauds, and it cannot afterwards be controverted by the parties or their successors in interest.

ID. — POLICY OF LAW — STABILITY OF AGREED LINE. — It is the policy of the law to give stability to such an agreement, as being the most satisfactory way of determining the true boundary, and tending to prevent litigation.

ID. — AGREEMENT BY PURCHASER IN POSSESSION WITHOUT TITLE — AFTER-ACQUIRED TITLE. — The purchaser of land in possession and claiming to be the owner thereof, who had not secured the legal title thereto at the time of a parol agreement with the owner of the adjoining lot establishing a dividing line, is bound by the agreement after he acquires the legal title.

ID. — ACQUIESCENCE — RATIFICATION. — Where such purchaser, after acquiring title from his vendor, acquiesces in the line previously established, and does not exercise any acts of ownership beyond it for a period of three years before commencing action, such long-continued acquiescence is a ratification of the agreement previously made.

APPEAL from a judgment of the Superior Court of Siskiyou County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*John V. Brown,* and *James F. Farraher,* for Appellant.

*H. B. Gillis,* and *H. B. Warren,* for Respondent.

PATERSON, J. — The record shows that in December, 1880, and long prior thereto, the plaintiff was in possession of the Coats place, which he now owns, and the defendant, Jackson, was in possession of an adjoining ranch, known as the Beaughan place. A dispute having arisen as to the boundary line between the two ranches, a surveyor was employed by plaintiff and defendant to make a survey and establish the true line. Such survey was made in December, 1880. The plaintiff testified as follows: "Jackson had this land fenced up for a long time prior to the first day of September, 1886, — maybe four or five years before that date, — along with other lands of his. . . . . Jackson and I established a line of fence between the Coats place, which I now own, and the Beaughan place, now owned by Jackson; we had the land surveyed from the center of section 28, west to the road. We established the line on the quarter-section line, and when we established the line, Jackson moved his fence out to the road, and inclosed this strip in controversy; that strip is narrower at the west end than at the east end. I bought the Coats place from Mr. Orr, but the deed did not include this strip, and Mr. Warren discovered that I had no deed, and that I must have a deed. I have exercised no acts of ownership over this strip of land. . . . . I had A. M. Jones survey this tract in about 1872. That strip is one hundred yards wider at the east end than at the west end. Dan Sullivan assisted Davidson in making the last survey. . . . . Jackson and I put up our fences on the line as determined by Mr. Davidson. I did not object to Mr. Jackson putting up fence on line

from center of section 28, west to the road, and inclosing this tract in dispute; he fenced it right after the survey made by Mr. Davidson. That line never was inclosed, except a small portion thereof inclosed by appellant, until Mr. Jackson fenced it after the Davidson survey. We built the fences on the lines agreed on. We ran one line west from center of section 28 to the road, and on this line Mr. Jackson was to build his fence, and I was to build as much on the north and south line as he was to build on the east and west line; we were to, and did, build equal portions of said fence. Jackson moved out his fence, and inclosed this strip of land. . . . . I never asked Mr. Jackson for the land, nor to be let into possession of it."

The defendant testified that he had occupied and used the land exclusively since 1880, and paid taxes on it ever since 1878, when he paid his proportion for the Whitmire patent for the northwest quarter of section 28; that he took all the wood he needed off the land in controversy since the establishment of the boundary line, and had prohibited others from cutting wood there for eight or ten years past. The assessment rolls offered in evidence showed that the land in controversy had been assessed to defendant every year from 1878 to 1887, and that defendant had regularly paid said taxes. The defendant testified that in 1872 a survey was made by one Jones on behalf of Mr. Wholey, Mr. Cavanaugh, and himself, the object being to determine how much Mr. Wholey and defendant were each to pay for the patent for the land granted by the state to Whitmire.

In rebuttal, the plaintiff proved by the records of the assessor and tax collector that he had had the lands in controversy assessed to him for the years 1885 and 1887, and had paid the tax for the year 1885.

We think that on this evidence the defendant was entitled to judgment. The parties entered into an express agreement fixing the dividing line between their lands; fences were built upon the line so established, and the parties have ever since acquiesced therein.

It is well settled that where the owners of contiguous lots by parol agreement mutually establish a dividing line, and thereafter use and occupy their respective tracts according to it for any period of time, such agreement is not within the statute of frauds, and it cannot afterwards be controverted by the parties or their successors in interest. (*White* v. *Spreckels,* 5 Cal. 610; *Helm* v. *Wilson,* 76 Cal. 485; *Blair* v. *Smith,* 16 Mo. 273; *Orr* v. *Hadley,* 36 N. H. 575; *Laverty* v. *Moore,* 32 Barb. 347; *Houston* v. *Sneed,* 15 Tex. 307.) It is the policy of the law to give stability to such an agreement, because it is the most satisfactory way of determining the true boundary, and tends to prevent litigation. (*Houston* v. *Matthews,* 1 Yerg. 118; *Fisher* v. *Bennehoff,* 121 Ill. 435.)

It is claimed by respondent, that, as the payment was made several years prior to the time when he received his deed from Coats for the land in controversy, it is not binding upon him; but the evidence shows that the plaintiff was in possession of the Coats place, and claiming to be the owner up to the line established. The evident meaning of his testimony is, that he had paid for the land, but had failed to secure the legal title thereto. It has been held that such an agreement, made by an occupant of public land, was binding upon him after he acquired legal title from the government. (*Jordan* v. *Deaton,* 23 Ark. 704. See also *Orr* v. *Hadley,* 36 N. H. 575; *Silvarer* v. *Hansen,* 77 Cal. 586.)

In many states it is held that in the absence of any express agreement, where the boundary line has been recognized, and parties have used and occupied according to it for a considerable period, although less than the period which would be a bar under the statute of limitations, they, and all claiming under them, will be estopped from afterwards claiming a different boundary. (*Blair* v. *Smith,* 16 Mo. 273; *Smith* v. *Hamilton,* 20 Mich. 438; 4 Am. Rep. 398.)

The agreement establishing a dividing line between the plaintiff and the defendant was made in 1881. Coats conveyed to Cavanaugh, April 30, 1884. From

the time the agreement was made until the commence-
ment of this action, on April 15, 1887, plaintiff never
exercised any acts of ownership over the land in contro-
versy. This long-continued acquiescence by the plaintiff
in the line previously established, we think, is a ratifica-
tion of the agreement made in 1881.

Judgment and order reversed, and cause remanded for
a new trial.

HARRISON, J., and GAROUTTE, J., concurred.