[L. A. No. 21271.   In Bank.   Dec. 13, 1950.]

JOE L. MELLO et al., Respondents, v. CHARLES L. WEAVER, Appellant.

[redacted]

George A. Moran and Fred J. Heid, Jr., for Appellant.

Louis J. Coelho for Respondents.

[redacted]

SHENK, J.—The plaintiffs brought this action to quiet title and to establish a fence and canal located in a general north-south direction as the common boundary between their lands and the lands of the defendant on the west. The area in controversy is a strip 100 feet wide along the east bank of the canal. The plaintiffs depended on proof to sustain alleged causes of action based on adverse possession and agreement to establish the boundary under the doctrine of agreed boundaries. The trial court found for the plaintiffs on all the issues and rendered judgment accordingly. The defendant appealed. The questions relate to the sufficiency of the evidence to sustain the judgment on either theory.

Since there is no evidence that the plaintiffs paid the taxes on any land except that called for by their record title, it must be concluded that there could be no support for a judgment based on adverse possession (Code Civ. Proc., § 325), unless the evidence supports the judgment which establishes the fence and canal as the boundary between the lands of the parties.

Both parties trace title to a common grantor. In 1881 the defendant's father, Leonidas Weaver, acquired a large portion of Section 6 in Township 20 South, Range 24 East, M.D.B.&M. This acquisition included the fractional southwest quarter. In 1892 Leonidas granted to Tulare Irrigation District for canal purposes an easement in a 40-foot strip running in a general north-south direction through that quarter section. A canal was constructed and was used and maintained by the district to serve water for irrigation purposes. A barbed wire fence was built along the west bank of the canal.

Leonidas Weaver died and his estate was distributed in 1913. In 1918 the defendant acquired from his mother two parcels of land, which in 1930 he sold to the plaintiffs. The lands are described in the plaintiffs' deed as: Parcel One, the southeast quarter of the southwest quarter of Section 6, Township 20 South, Range 24 East, M.D.B.&M., containing 40 acres more or less; and Parcel Two, the East 3 acres of the southwest quarter of the fractional southwest quarter of Section 6. In 1939 the defendant acquired from his mother the remaining land in the southwest quarter of the fractional southwest quarter.

In 1918 when he went into possession of Parcels One and Two the defendant occupied, irrigated and farmed the land to the east bank of the canal. At the time of the plaintiffs' negotiations with the defendant for the purchase of Parcels One

and Two the canal and fence were indicated as the west boundary. When the plaintiffs went into possession and during their occupancy they irrigated and farmed the land to the east bank of the canal without objection by the defendant's mother or by the defendant after he became the owner of the adjoining land, until this controversy arose. In 1948 the defendant obtained a survey and a map which he introduced in evidence as a correct representation of the boundaries of the lands. This survey placed the west boundary of the plaintiffs' land 100 feet easterly from the canal. In 1948 when the defendant's attempted negotiations for the plaintiffs' purchase of the 100-foot strip failed, he took down the old fence, occupied the strip and began construction of a new fence 100 feet easterly from the canal which he discontinued when this litigation was commenced.

The judgment established the east bank of the Tulare Irrigation District Canal as the west boundary of the lands described in the deed to the plaintiffs. The defendant contends that the judgment is unsupported because there is no evidence of an agreement by coterminous owners which would establish the canal as the boundary between their properties; and that such an agreement may not be enforced in any event because, so it is claimed, there is also lacking any evidence of uncertainty in the boundaries of the lands as described in the deed.

The requirements of proof necessary to establish a boundary by agreement are well settled by the decisions in this state. (See *Hannah* v. *Pogue*, 23 Cal.2d 849, 856-857 [147 P.2d 572], and *Martin* v. *Lopes*, 28 Cal.2d 618 [170 P.2d 881], where the numerous cases are collected.) ▉ Mere agreement to locate a boundary known to be different from that called for by the deeds is insufficient, since such an agreement would be tantamount to a conveyance by parol, an unrecognized method of transfer of real property. (*Lewis* v. *Ogram*, 149 Cal. 505 [87 P. 60, 117 Am.St.Rep. 151, 10 L.R.A.N.S. 610]; *Mann* v. *Mann*, 152 Cal. 23 [91 P. 994]; *Clapp* v. *Churchill*, 164 Cal. 741, 745 [130 P. 1061]; *Grants Pass Land & Water Co.* v. *Brown*, 168 Cal. 456, 459 [143 P. 754]; *Staniford* v. *Trombly*, 181 Cal. 372 [186 P. 599]; *Dauberman* v. *Grant*, 198 Cal. 586, 592 [246 P. 319, 48 A.L.R. 1244].) ▉ But as early as *Sneed* v. *Osborn*, 25 Cal. 619, where the position of the initial point in the description was uncertain, a division of land between coterminous owners as in accordance with the deed description, and mutual acquiescence in their practical location of the common boundary over a long period of time, was held to consti-

tute the location of the true boundary as called for by the deed. The doctrine grew out of the need for stability and repose in the matter of titles to real property. (*Cavanaugh* v. *Jackson,* 91 Cal. 580 [27 P. 931].)

■ The agreement need not be express, but may be implied from long acquiescence. (*Hannah* v. *Pogue, supra,* 23 Cal.2d 849, and cases cited at p. 856.) ■ But since it is valid only for the purpose of settling an uncertainty in a common boundary, the implied agreement must have been based on a doubtful boundary line. (*Lewis* v. *Ogram, supra,* 149 Cal. 505; *Clapp* v. *Churchill, supra,* 164 Cal. 741; *Huddart* v. *McGirk,* 186 Cal. 386 [199 P. 494].) A dispute or controversy is not essential (*Helm* v. *Wilson,* 76 Cal. 476, 485 [18 P. 604]; *Thaxter* v. *Inglis,* 121 Cal. 593 [54 P. 86]), but it may be evidence of the existence of a doubt or uncertainty. ■ Nor is it a requirement that the uncertainty should appear from the deed or from an attempt to make an accurate survey from the calls in the deed. The fact that an accurate survey is possible is not conclusive of the question whether a doubt existed as to the location of a common boundary. ■ Thus the doubt may arise from a believed uncertainty which may be proved by direct evidence or inferred from the circumstances surrounding the parties at the time when the agreement is deemed to have been made (*Clapp* v. *Churchill, supra,* 164 Cal. 741, 745; *Roberts* v. *Brae,* 5 Cal.2d 356 [54 P.2d 698]; *Board of Trustees* v. *Miller,* 54 Cal.App. 102 [201 P. 952]; *Raney* v. *Merritt,* 73 Cal.App. 244, 250 [238 P. 767]; *Todd* v. *Wallace,* 25 Cal.App.2d 459 [77 P.2d 877]); and if in good faith the parties resolve their doubt by the practical location of the common boundary it will be considered the boundary called for by the deed. (*Young* v. *Blakeman,* 153 Cal. 477 [95 P. 888]; *Schwab* v. *Donovan,* 165 Cal. 360 [132 P. 447].)

■ The defendant's contention that there is no evidence supporting the finding as to uncertainty might have merit if there was no more than an assumption on the part of the plaintiffs that the canal and fence marked the west boundary. (*Cf., Clapp* v. *Churchill, supra.*) Here we have additional evidence which the trial court could properly consider.

The fractional southwest quarter of Section 6 consists of 171.84 acres. A government survey map of the township introduced during the testimony of defendant's witness represents a division thereof into the 80 acres for the east half and 91.84 acres for the west half. But the explanation by the witness of the overage in the north and west tiers of township

sections indicates the possibility of proportioning such overage between the two halves of the fractional quarter section, and therefore that the division of the acreage as shown on the map might be inaccurate. In 1930 the only recorded survey map shows the length of the south line of the fractional southwest quarter as 2,916.5 feet, without any indication of the division between the east and the west halves. The defendant's 1948 survey map fixes 2,910.82 feet as the length of the south line divided 1,351.98 to the east half and 1,558.84 to the west half. An exact center point between the east and west lines of the fractional southwest quarter would give 1,455.41 feet to each half. The 1948 survey map shows the distance of the south line of both Parcels One and Two as 1,450.89 feet, which is less than 5 feet off the exact center of the south line. Parcel Two as before noted contains 3 acres. Three acres is also the approximate area between the canal and the west boundary of. Parcel Two as represented on the 1948 map. The overage in the south half of the fractional Southwest quarter would be approximately 6 acres. Thus the inference may clearly be drawn that when the mother and son divided that south half they believed that a proper division required the center line to be fixed at a point equidistant from the east and west lines of the fractional quarter section. Location of the center line at that point would facilitate an equal division of the south half including the 6-acre overage. It could thus be inferred that the transfer of Parcel Two in conjunction therewith was for the purpose of giving to the son the 3-acre area between the center line as thus determined and the canal for greater convenience in procuring water for irrigation, a necessity in the farming practices of that region.

The absence of direct evidence of an agreement based on an uncertainty may not therefore be successfully asserted by the defendant. His ownership and occupancy successively of each tract and the mutual acquiescence in the canal as the boundary between him and the successive owners of the adjoining tract for a period of 30 years constituted an admission against his interest (*Stanley* v. *Green,* 12 Cal. 148, 164), and created a conflict with his testimony that there was no agreement and that the fence was built by his father to turn stock. This admission and the inference of uncertainty from the documentary evidence support the conclusion that in the minds of the mother and son the purpose in transferring the additional 3 acres was to convey the lands to the canal line. Until the 1948 survey none of the successive owners

of the adjoining tracts knew the location of the center line of the fractional southwest quarter. And under the evidence of lack of knowledge and doubt as to the location of that line, together with the long acquiescence by the defendant and the adjoining owners in the fence and canal as the common boundary, the inference also follows that the fence was built or accepted for the purpose of settling the 1918 location of the division line. It is of no consequence on this record that 30 years later the agreed line is shown to be different from a surveyed line; for, as said in *Young* v. *Blakeman, supra,* 153 Cal. 477, at 481, to permit the boundary to be changed by every subsequent measurement would produce an intolerable condition of uncertainty and instability in the title to lands. Likewise in *Silva* v. *Azevedo,* 178 Cal. 495, 498 [173 P. 929], it was recognized that the possibility of an accurate survey from the calls in the deed does not preclude the existence of an uncertainty. For "this condition exists in virtually every case in which the aid of the rule is sought. There is no occasion for asserting that a boundary has been established by agreement, unless the description in the conveyance in reality designates a different boundary," since only where the true location is subsequently ascertained do such controversies arise. The controlling factor is whether the mutual intent was to establish an otherwise unknown or uncertain boundary line and to settle it as the true line. And in *Nusbickel* v. *Stevens Ranch Co.,* 187 Cal. 15, 19 [200 P. 651], this court said: "The belief of the parties for the long period of thirty years following the location, as shown by the findings, is a sufficient reason for the application of the doctrine, so far as that state of mind is essential thereto. The fact that it was founded on a mistake always appears, and must appear, else there would be no occasion to invoke the doctrine." (See, also, *Moniz* v. *Peterman,* 220 Cal. 429 [31 P.2d 353].)

The description in the deed to the plaintiffs was sufficient to describe the land actually set apart to the defendant by his mother; and the evidence supports the findings on the issues of uncertainty and of agreement to establish the fence and canal as the boundary called for by the deed. There is nothing in any of the cases relied on by the defendant which is inconsistent with these conclusions.

The judgment is affirmed.

Gibson, C. J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

EDMONDS, J.—To me the evidence relied upon to support the finding as to uncertainty is not of such character that ''the inference may clearly be drawn that when the mother and son divided that south half,'' they agreed upon the boundary line. I think that this conclusion is sheer speculation and that the record does not show any uncertainty sufficient to invoke the rule of law which is applied.