[Civ. No. 4407. Fourth Dist. Jan. 23, 1952.]

GRADY GLENN et al., Respondents, v. EARL J. COOK et al., Appellants.

Harvey, Rimel & Johnston for Appellants.

Forgy, Reinhaus & Forgy for Respondents.

BARNARD, P. J.—This is an action to quiet title to a part of the easterly portion of Lots 6 and 7 of the Rancho Canada de los Alisos, as shown on a recorded map. The property is in a mountainous area of Orange County, and the action was brought for the purpose of settling the easterly boundary line of plaintiffs' property, which is also the westerly line of defendants' property. The southern portion of that line would also be the westerly border of the northerly portion of Rancho Trabuco. The effect of the judgment appealed from was to fix this boundary line, and to quiet the title of the plaintiffs to a strip of land about 3,600 feet long and varying in width from a few feet to about 350 feet.

The Alisos Rancho was first surveyed and platted by John C. Hays in 1858. His survey was approved by the land office and in 1871 a patent based on that map was issued to Jose Serrano. In 1874, a part of the line in dispute was again surveyed by William Minto, a government surveyor. In 1876, the Alisos Rancho was subdivided into lots through a recorded map prepared by Baldwin and Bridger at the request of Serrano. Another survey, material to the line in dispute, was made by William Minto in 1882.

The plaintiffs purchased their property in 1945 from the daughter of James McFadden, who acquired it in 1881. The defendants inherited the southerly part of their property from their father, who first acquired it in 1884, and acquired the northerly part by purchase in 1919.

In the fall of 1922, W. W. Hoy made a survey for the defendants Earl J. Cook and his sister Addie M. Cook, which they accepted and used for the purpose of dividing the old Cook ranch between them. In the same year Hoy made another survey for James McFadden. In 1946, the defendants sold a portion of their property to one West, and Hoy and his son were again employed to make a survey and to prepare the description used in conveying that property. Later, in 1946, Hoy made another survey for the plaintiffs in connection with this litigation.

In their answer the defendants pleaded, among other things, that corners T-6 of Rancho Trabuco and A-10 of the Alisos Rancho had been adopted as a common corner; that plaintiffs' title was derived through a conveyance based on the recorded subdivision map prepared by Baldwin and Bridger in 1876; and that plaintiffs had no title to any land east of a line projecting north at a certain angle from corner T-6 of Rancho Trabuco.

The Hays map of 1858 and the Minto maps of 1874 and 1882, with the field notes for all three, were introduced in evidence. The Baldwin and Bridger map of 1876 was introduced in evidence, but the field notes in connection therewith could not be found. The Hoy maps were introduced in evidence and Hoy and his son testified with respect thereto, and with respect to the relation of their survey findings to the earlier surveys. A number of old time residents testified concerning various facts and common reputation as to this boundary, running back as far as 1880 or earlier. The trial judge spent an entire day in viewing the premises, accompanied by the clerk, the parties, counsel for both sides, and at least one surveyor. The defendants employed another surveyor to examine certain markers and to search for others, and he testified. The defendant Earl Cook testified that he did not have a survey made for the purposes of this action because he was told by the county surveyor "You can spend your whole ranch on the survey and you won't know any more when you finish than when you started." There were many conflicts in the evidence, and some inconsistencies between the various surveys, which seems natural in view of the rough

nature of the country, changes wrought by the years, and an undisputed difference in the accuracy of the instruments used in earlier years. The respondents agree with appellants' statement that "No absolutely accurate survey ever was or ever will be made."

The defendants have appealed from the judgment, their main contention being that the controlling finding, fixing the easterly boundary line of plaintiffs' property, is not supported by the evidence. It is argued that in attempting to find the line of the Alisos Rancho the Hoys did not follow Hays' survey of 1858, but used the Minto notes, and that certain stones found by the Hoys varied in size from those described by Minto; that the Hoys' measurements in the vicinity of T-6 and A-10 were not the same in 1946 as in 1922, and are not the same as those given by either Hays or Minto; that while Hays and Minto placed A-10 330 feet northerly of T-6, Hoy fixed this distance at 370 feet in 1922 and 383 feet in 1946; that the sycamore tree marked A-11 by Hays in 1858 and by Minto in 1882 was not in the same spot as that selected by Hoy for this point; that there were various inconsistencies between the Hays and Minto surveys and the later Hoy surveys; and that Hoy improperly used the "proportional" method in locating one quarter section corner.

The appellants state that the basic issue is the location of corners A-10 and A-11 according to the Baldwin and Bridger subdivision map. It is then contended that respondents' title stems from that subdivision map; that since the field notes of Baldwin and Bridger cannot be found this map constitutes the only basis of the respondents' title, and must be taken as controlling; that this map shows corners T-6 and A-10 as being in the same place; and that this necessarily places the easterly boundary line of the Alisos Rancho about 300 feet west of that found by the court, thus entitling the appellants to most or all of the disputed strip awarded to the respondents. It is also argued that point A-11 was not satisfactorily established since the fallen sycamore tree found near that point was not shown to be the same tree as that referred to in the surveys of Hays and Minto.

Point T-6 is the northwest corner of Rancho Trabuco. While the appellants concede that both Hays and Minto put points A-10 and T-6 five chains apart (some 330 feet), they explain the fact that the Baldwin and Bridger map puts these points together by saying: "The probable reason is that the northerly boundary of the Trabuco Rancho was,

at some time unknown but before 1876, pushed northward to what was supposed to be the former location of A-10.'' There is no evidence of any change in the northerly boundary of the Trabuco Rancho, and Minto, in 1882, still placed these points five chains apart, placing a sandstone marker at each point. Moreover, if T-6 had been pushed northward, A-10 would still correspond with the court's findings.

The appellants state that the length of Course 9, which leads to point A-10, is identical on the Hays map and on the Baldwin and Bridger subdivision map, being 68.50 chains. The Hays map, which was used in the patent, shows 63.50 chains to point T-6 and goes on another five chains to point A-10, all a part of Course 9. If point A-10 was intended to be moved back to point T-6 by the subdivision map, the length of Course 9 is not identical with that course in the Hays map. Hoy testified that if anyone tried to follow the course and bearings given on that subdivision map he would not come within 1,000 feet of point T-6, and that this 1,000 feet could be in almost any direction.

The subdivision map (Exhibit B) shows a large dot marked ''A.N.10.T.N.6.'' The map is scaled to 1 mile to 1¾ inches and this dot would scale to nearly 300 feet, which is somewhere near the distance between these points given by Hays and Minto. Baldwin and Bridger were subdividing the Alisos Rancho at the request of Serrano, who had recently received a patent, on which A-10 was the most easterly point and very important. T-6 was a point on the survey of the Trabuco Rancho to the east, and it seems more probable that Baldwin and Bridger were mainly concerned with the location of A-10, and only incidentally with that of T-6. Point A-10 was farther east than T-6 and somewhat north of the northerly boundary of the Trabuco Rancho. In subdividing the Alisos Rancho Baldwin and Bridger clearly intended to go to A-10, as shown on the Hays map followed in the patent, and it is reasonable to believe that they must have intended to subdivide that ranch as it was patented and not leave a narrow strip on the east. This appears more reasonable than to suppose they intended to indicate that point A-10 had been moved westerly some 300 feet in some unknown manner. The Baldwin and Bridger map, without any supporting field notes, is the only evidence that points A-10 and T-6 might be considered as one point. The great weight of the evidence is that they are not, and never were, at the same point and it may reasonably be

inferred from the evidence, as a whole, that the subdivision map was based upon the real location of point A-10, and not upon any supposition that it should be considered as having been moved down to T-6.

The subdivision map clearly shows that Baldwin and Bridger went on beyond T-6 and used the points A-10 and A-11 named in the previous government surveys which had been fixed by Hays and Minto. They show a sycamore tree as marking A-11, which is the other end of Course 10. This sycamore tree, marked A-11, is referred to by Hays in 1858 and by Minto in 1882 as marking A-11. In the Hoy survey in 1946, and at the time of the trial, a sycamore tree of the same size was found fallen across a creek channel. No old markings were found on it, so far as could be observed, but there is ample evidence that the place where it had stood was approximately where the tree marked by Hays and Minto had been. Hoy, after checking on the position from other determinable positions, fixed A-11 near the point where this fallen sycamore had stood and set an iron stake, which was accepted by the court as A-11.

The Baldwin and Bridger map was incomplete with respect to essential courses and distances, and regardless of what it purports to show it was necessary that it be interpreted with respect to how it lay on the ground. It referred to points fixed in the Hays map of 1858, adopted for the purpose of the patent, which points were confirmed by the other survey made by Minto in 1882. It was necessary to use these earlier surveys and maps in interpreting the subdivision map, in order to ascertain the easterly boundary of respondents' property as it had been conveyed to them. This was done with the added assistance of the recent surveys and the testimony of the surveyors who had made them. There was a great deal of technical testimony by the Hoys and another surveyor produced by the appellants. The evidence, as a whole rather clearly locates essential points and explains how and why it was necessary to use the best available means to determine the location of some monuments which could not be found. ■ While inconsistencies and conflicts appear in the evidence the official surveys and records, with the testimony of the surveyors, indicate that the boundary line in question, as located by the court, is approximately correct and is as nearly correct as is possible under existing conditions. The court's view of the premises, and its assistance to the court in interpreting the evidence,

is an added factor in support of the judgment. . The testimony of the old settlers, while not without conflict, insofar as it has any effect at all tends to support the conclusion of the court as to the true location of this boundary. While the evidence is conflicting, in many respects, it sufficiently supports the findings complained of.

Most of the other points raised depend upon the findings already considered, and require no further discussion. Some claim is made that the appellants had acquired title to the disputed strip by adverse possession. The court found against this contention and the evidence supports that finding. The only error assigned in connection with the admission of evidence is the sustaining of an objection to a question asked of W. W. Hoy on cross-examination. The question was purely argumentative, and in practical effect was one which the court was required to determine for itself from all of the evidence. No possible prejudice appears in this connection.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.

The opinion was modified to read as above printed and a petition for a rehearing was denied February 18, 1952.

Appellants' petition for a hearing by the Supreme Court was denied March 20, 1952.