[Civ. No. 4375.   Fourth Dist.   Apr. 30, 1952.]

MARK MORRIS et al., Appellants, v. HERMAN A. VOSSLER, Respondent.

Ralph E. Wallace for Appellants.

John R. Berryhill, Calvin L. Russell and Russell B. Henry for Respondent.

GRIFFIN, J.—Action to quiet title and to determine boundary line between two parcels of land in Tulare County. Plaintiffs Mark Morris and his wife alleged that on February 21, 1947, they acquired property in the southwest quarter of the southeast quarter of section 22, township 21 South, Range 26 East, M.D.B.&M., by deed, which property is

described by metes and bounds, and alleged that defendant Herman A. Vossler claimed some interest therein. Defendant alleged ownership of the southwest quarter of section 22, denied plaintiffs' ownership and, by way of cross-complaint to quiet his title, claimed interest in a strip of land about 26 feet wide lying between the two properties and containing about two acres. The boundaries of this strip are evidenced by an old fence, erected about 40 years ago on the easterly side of said strip, which runs in a northerly and southerly direction, and a survey line made by plaintiffs' engineer, west of the fence line and running parallel with the fence across section 22.

The court found generally in favor of defendant and quieted his title to said strip of land upon the claimed theory that the true boundary between the southeast quarter and the southwest quarter of section 22 was in dispute and uncertain and that there was an agreement between the coterminous owners of said properties, predecessors in interest of both plaintiffs and defendant, establishing and locating the true boundary between said properties along the fence line as more fully set forth in the findings; that said fence was built prior to the year 1907; that defendant and his predecessors in interest farmed, occupied and improved the property up to the said fence line continuously since said date, and that the respective owners acquiesced in said line as being the true line for a period equal to the statute of limitations. It then found that for more than 50 years an irrigation ditch, running northerly and southerly west of and parallel to said fence in the disputed area, has been built and used to carry water for irrigation of the southwest quarter of said section. Judgment was entered accordingly.

On plaintiffs' appeal, they contend that judgment should have been in their favor and that the findings and judgment in favor of defendant are not supported by the evidence for the claimed reasons that the record is silent as to any effort having been made to locate any of the corners of section 22 at the time the fence was built; as to any absence or destruction by the elements, or otherwise, of any of the corners of said section; as to any mistake in measurement, or that the land was measured, at or about the time the fence was built; as to any uncertainty in the location of the north and south quarter section line between the properties; as to the time when the purported agreement to establish the boundary was made, or deemed to have been made; as to who built the fence

or when it was built, or that it was built to establish a boundary; as to any occupancy of the land east of the fence line in question, or that it was cultivated or actually occupied by anybody prior to 1915; and that since both properties were described in the deeds by metes and bounds, and since the north and south quarter section line dividing section 22 was capable of being located with certainty, defendant could not claim any uncertainty as to its location.

In support of plaintiffs' contentions they offered in evidence a map made from a survey in 1946, showing certain monuments and corners as well as courses and distances, which map contains notes of finding corners from ties of former surveys.

Defendant's evidence shows that the fence was built sometime prior to 1907, and that defendant had occupied and used a portion of the strip openly and adversely as a water reservoir for irrigation of his lands, and that he and his predecessors in interest used and maintained an irrigation ditch approximately 20 feet in width along said strip and west of the fence line for more than 50 years. A 14-inch concrete irrigation pipe was laid by defendant at a cost of $3,260 in said strip for the purpose of irrigating his adjoining orchard. Defendant resided on or near the property all his life. His father purchased it in 1907. The fence, in 1915, continued northerly through the north half of section 22 on the same line as the fence here in question and it was then "considered" to be the north and south center line of section 22. This fence line was some 20 feet east of a survey bolt now in place in the concrete highway running along the north boundary of that section and, according to the record, there have been discrepancies between the old and the new surveys in section 22 and in that area, and fences have been subsequently moved. It was related by an engineer that the only survey notes in existence were those found in the county surveyor's office from the year 1917 to 1948, and that some of the monuments now in place are imbedded in the concrete highway which is of more recent construction. According to the testimony of Mr. Green, predecessor in interest to plaintiffs, he purchased this property in 1915, and he testified that he made no survey at that time; that he considered the fence line as his westerly boundary line and that "our agreement was that we recognized it as being the boundary line" between the properties involved. However, he did testify that about that time he wanted to cut up his property in 40-acre tracts and

that he had a surveyor employed for that sole purpose; that they assumed the fence line was the boundary line; that he talked to the Vosslers about it and a question arose as to whether the fence was on the exact line; that they "accepted the fence, as being on the line . . . as far as our rights were concerned, . . . and we established the line just as it was." Defendant testified that there used to be a government stake within a few feet of the original fence line on the north but that was not true as to the south terminous of the line, and that they always "recognized that the fence was off a few feet one way or the other" but the fence "didn't run exactly straight." Predicated upon this statement, counsel for plaintiffs argues that since defendant did not believe the line of the fence to be the real boundary this evidence is fatal to the application of the rule of agreed boundaries, citing such cases as *Friedman* v. *Southern Calif. Tr. Co.,* 179 Cal. 266 [176 P. 442]; and *Pedersen* v. *Reynolds,* 31 Cal.App.2d 18 [87 P.2d 51]. The cases relied upon by plaintiff are factually different and do not form the basis for a reversal of the finding here made or the judgment based thereon. Beginning with the decision in *Martin* v. *Lopes,* 28 Cal.2d 618 [170 P.2d 881]; *Crook* v. *Leinenweaver,* 100 Cal.App.2d 790 [224 P.2d 891]; *Mello* v. *Weaver,* 36 Cal.2d 456 [224 P.2d 691]; *Carr* v. *Schomberg,* 104 Cal.App.2d 850 [232 P.2d 597]; and ending with *Glenn* v. *Cook,* 108 Cal.App.2d 784 [239 P.2d 680], the courts of this state have thoroughly reviewed the law concerning the establishment of boundaries by agreement, and, in each of the cited cases, have upheld a finding of an agreed boundary line as against a boundary line determined by measurement alone. In *Hannah* v. *Pogue,* 23 Cal.2d 849 [147 P.2d 572], where plaintiff contended that there must be direct evidence of uncertainty or dispute as to the true boundary line and that there must be direct evidence that there was an agreement, the court said, at page 856:

"It is the rule . . . that the court may infer that there was such an agreement ensuing from uncertainty or a dispute, from the long-standing acceptance of a fence as a boundary between the lands of two owners." (Citing cases.)

In that case a fence was in existence when plaintiff purchased the property. She testified she knew of no agreement that the fence should constitute the boundary line. The court held that this testimony would not necessarily rebut the inference that there was such an agreement, for the inference

may be made that an agreement was inherent in the long standing acceptance of the fence as the boundary, and said:

"It is unnecessary to decide whether on this evidence the agreement can be assigned to this particular date, (1917) for the precise date of agreement is immaterial in view of the acceptance of the fence as a boundary over a long period of years."

In *Mello* v. *Weaver, supra,* at page 460, the court said that a dispute or controversy is not essential but it may be evidence of the existence of a doubt or uncertainty, and it is not a requirement that the uncertainty should appear from the deed or from an attempt to make an accurate survey from the calls in the deed. ██ The fact that an actual survey is possible is not conclusive of the question whether a doubt existed as to the location of a common boundary and thus the doubt may arise from a believed uncertainty which may be proved by direct evidence or inferred from the circumstances surrounding the parties at the time the agreement is deemed to have been made. And if in good faith the parties resolve their doubt by the location of a common boundary it will be considered the boundary called for by the deed.

█ We conclude that there is sufficient evidence to support the finding of the court as to the essential elements necessary to establish an agreed boundary, i. e., that there is (1) an uncertainty as to the true position of the boundary; (2) an agreement to establish a common boundary line; (3) marking or building up to the agreed boundary; (4) occupation of the real property to such line; and (5) acquiescence in the line thus established for a period equal to the statute of limitations.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.