[Civ. No. 7718. Fourth Dist., Div. 1. Mar. 8, 1966.]

ARNOLD R. KRAEMER et al., Plaintiffs and Respondents, v. THE SUPERIOR OIL COMPANY, Defendant and Appellant.

[Civ. No. 7719. Fourth Dist., Div. 1. Mar. 8, 1966.]

ANTONIO DE LOS REYES et al., Plaintiffs and Respondents, v. THE SUPERIOR OIL COMPANY, Defendant and Appellant.

(Consolidated Cases.)

Hanna & Morton, Harold C. Morton, John H. Blake and Edward S. Renwick for Defendant and Appellant.

Mize, Larsh, Mize, Hubbard & Baxter, Marjorie Mize LeGaye, Launer, Chaffee, Hanna, Ward & Stack, and Bob Ward for Plaintiffs and Respondents.

FINLEY, J. pro tem.*—This appeal involves a land survey controversy and is taken by defendant from a judgment in favor of plaintiffs. Appellant being the defendant in both cases and the problems involved being the same or sufficiently similar, the cases were consolidated for trial.

Respondents Kraemer are owners of property in the northwest quarter, and respondents De Los Reyes are the owners of property in the northeast quarter of Section 24, Township 3 South, Range 9 West S.B.B. & M. located near the town of Yorba Linda in Orange County, California. These properties join along the east-west quarter section line, the De Los Reyes property lying to the east. Appellant owns the south half of Section 13 which lies to the immediate north of respondents' properties joining them along their north line, the south boundary of Section 13 being the north boundary of Section 24. Respondents contend that this common boundary or section line is marked by a fence over 60 years old. Appellant contends that the true boundary is along a line approximately 200 feet to the south of the old fence and on this claimed line erected a new fence. The disputed area lies between these two fences.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

Respondents rest their claim to the disputed strip on three grounds:

1. The boundaries of the sections involved as originally established by the United States government surveyor coincided with the 60-year-old fence.

2. The 60-year-old fence became an agreed boundary.

3. In any event respondents had acquired title to the disputed strip by adverse possession.

The trial court found for respondents on all three issues.

### Appellant Contends

I. The trial court failed to make findings of fact on material issues.

II. The findings of fact which locate the corners of Section 24 and which reject appellant's positions for the same are not supported by the evidence.

III. Findings of fact that a fence line therein described became an agreed boundary line are not supported by the evidence or the law.

IV. The evidence does not support the findings which purport to find that plaintiffs acquired title by adverse possession of the strip in dispute.

The trial court prepared a memorandum opinion outlining its thinking on the problems presented, a part of which reads as follows:

"1. The evidence presented by plaintiffs' surveying experts, corroborated by other experts, their conclusions and the reasons therefor, and the overwhelming weight of the evidence supports the conclusion that the true boundary was properly located by plaintiffs' experts in accordance with the original government survey. (The Hancock survey.)

"2. The fence to which the plaintiffs have farmed and occupied their lands for over sixty years without objection from defendant or its predecessors constitutes an agreed boundary.

"3. All of the elements necessary to prove adverse possession have been established by plaintiffs including payment of taxes on the disputed territory."

Of course the thoughts expressed and the findings outlined in a memorandum for judgment do not satisfy the requirement of formal findings. But the filing of formal findings followed.

A judgment sufficiently lacking support in the findings cannot stand. Two questions face us at this point: (1) Are the findings adequate to support the judgment, and (2) if the findings support the judgment, does the evidence support the essential findings?

The trial of these cases covered an overall period of 23 days. The reporter's transcript covers 1,100 pages. In determining the answers to the above questions it is not required that we review the abundant evidence and attempt a re-assessment of its overall weight and probative value. If the findings are adequate as a matter of law to support the judgment our sole remaining duty is to determine if there is any substantial evidence, contradicted or uncontradicted, to support the findings. (*Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427 [45 P.2d 183]; *Estate of Bristol*, 23 Cal.2d 221 [143 P.2d 689].) The duty of an appellate court is not to seek out and analyze conflicts or to substitute its own appraisal of conflicts for that of the trial court in the absence of some compelling reason in support of the conclusion that the trial court obviously abused its discretion. When two or more inferences can be reasonably deduced from the facts a reviewing court is without power to substitute its deductions for those of the trial court. (*Hartzell* v. *Myall*, 115 Cal.App.2d 670, 673 [252 P.2d 676].) In the absence of prejudicial errors of law or violence to reason it is the duty of an appellate court to uphold the trial court. (*Chandler* v. *Hibberd*, 165 Cal.App.2d 39 [332 P.2d 133].) Where an appellant urges the insufficiency of the evidence to sustain the findings, such contention requires appellant to demonstrate that there is no substantial evidence to support the challenged findings. (*Nichols* v. *Mitchell*, 32 Cal.2d 598 [197 P.2d 550]; *Chandler* v. *Hibberd*, *supra*, 165 Cal.App.2d 39; *Crystal Pier Amusement Co.* v. *Cannan*, 219 Cal. 184, 192 [25 P.2d 839].) All presumptions are in favor of the decision of the trial court. (*McChristian* v. *Popkin*, 75 Cal.App.2d 249, 263 [171 P.2d 85].)

Appellant first contends that the court erred in failing to make findings on the location of all of the corners located by the original government survey which it contends controls the location of the true boundary; that although it made findings concerning the corners common to Sections 13 and 24, it did not find concerning the location of the corners of other sections in the township which were disputed by the parties and necessary to the proper establishment of the true boundary. Appellant takes the position that it is necessary to retrace

much of the original survey in order to establish the original corners and proper boundary between Sections 13 and 24 and failure of the court to make findings as to the location of other corners makes it impossible to determine whether the court did a proper job of retracing.

Respondents reply that the location of other corners was not material or necessary; that this is an action to quiet title to property in Section 24 and that fixing the location in findings and judgment of corners other than the disputed corners of that section was not essential to a resolution of the question of ownership of the disputed parcel.

We agree with respondents' contention. In determining whether the findings give support, the judgment is construed in relation to the issues before the court. (*Roger* v. *Struven*, 44 Cal.App. 528 [186 P. 817].) If the judgment appears to be supported by the findings when examined with the record as a whole, it can only be construed to harmonize with them. (*Downs* v. *Kroeger*, 200 Cal. 743 [254 P. 1101].)

A court is required to make findings only as to the ultimate facts and not as to all of the constituent elements. (*Pierce* v. *Wright*, 117 Cal.App.2d 718 [256 P.2d 1049]; *Hulen* v. *Stuart*, 191 Cal. 562 [217 P. 750]; *Ho Gate Wah* v. *Fong Wan*, 118 Cal.App.2d 159 [257 P.2d 674]; *Siquig* v. *West Coast Pickle Co.*, 161 Cal.App.2d 254 [326 P.2d 596].) Were this not so a trial court in cases such as this could be required to follow all surveys in question back to a zero starting point with findings as to each corner along the route, even though such corners or reference points be located on property far removed from the property in question, with owners thereof not before the court and entitled to protection from the mischief which could follow a gratuitous judicial pronouncement concerning their corners. No chain is stronger than its weakest link, and likewise no survey is overall more accurate than the proper location of each corner or reference point along the course. But this does not validate the argument that in being called upon to locate two remote corners the court must make actual formal findings concerning the proper location of each point along the way. The court's finding as to the corners delineating the disputed boundary line between the particular areas in question was the ultimate fact to be determined and a finding thereon is all that is authorized or necessary. A judgment that goes beyond the issues litigated is void insofar as it exceeds those issues. (*In re Wren*, 48 Cal.2d 159 [308 P.2d 329].)

 This is not to say that in making ultimate findings of fact a trial court should not consider all surrounding reference points and corners and any evidence, so far as it has been produced, relating to them. We are not persuaded that the trial court failed in this case to give adequate consideration to all of these factors and the many others presented to it. The testimony and other proof is voluminous and complicated. Many experts took the stand and gave their opinions as well as their supporting reasons for these opinions. In its memorandum opinion the court stated: ". . . the conclusions reached by plaintiffs' experts and the reasons given therefor carry the more convincing force." The court viewed the premises and although the record does not and could not disclose what he saw, so long as his view of the premises was authorized that which he did see is as much supporting evidence for his findings as is any proof in the record. (*Herbold* v. *Hardy,* 104 Cal.App.2d 417 [231 P.2d 910]; *Smith* v. *Smith,* 135 Cal.App.2d 100 [286 P.2d 1009]; *Memorial Hills Assn.* v. *Sequoia Inv. Corp.,* 157 Cal.App.2d 119 [320 P.2d 567]; *Saxon* v. *Du Bois,* 209 Cal.App.2d 713 [26 Cal.Rptr. 196].)

Furthermore, we find nothing in the record or in the arguments of counsel which would entitle us to question the trial judge's proper application of accepted rules or precedent in analyzing the proof and in properly evaluating it. In a specialty field such as land surveying a trial court is entitled to rely heavily upon the opinions and supporting reasons given by the experts who testified and unless the conclusions reached by the court are palpably erroneous they must be accepted by a reviewing court. We are satisfied that there is ample evidentiary support for the trial court's findings concerning the common corners between Sections 13 and 24 which findings in turn we find adequate within the area of their application to support the judgment.

Next in order is appellant's contention that the 60-year-old fence did not constitute an agreed boundary because there was no showing that there was uncertainty concerning the location of the true boundary at the time the fence was constructed or that there was ever an agreement to treat the fence as a true boundary or that there were any facts which would estop appellant from claiming that the fence did not represent the true boundary. It is submitted, argues appellant, that the only showing was that there was a fence in existence for over 60 years and that respondents and their predecessors cultivated and occupied the land to the fence line during that

period. This alone, says appellant, is insufficient to call into play the doctrine of agreed boundaries.

Appellant calls our attention to a number of cases commencing with *Staniford* v. *Trombly,* 181 Cal. 372 [186 P. 599], which it contends stand for the proposition that mere existence of a fence and occupancy to the fence is insufficient to support a finding of agreed boundary. The cases cited on this proposition, however, are all distinguishable from the case at bar. In *Staniford* v. *Trombly, supra,* for instance, the fence involved was built by agreement of the original parties as a so-called "drift fence" or fence designed to prevent the straying of stock. Each built one-half of it. The court found that: "Said fence was not built upon an agreed boundary line . . . to settle any dispute, uncertainty or controversy arising over or out of the true location of the dividing line between the two said tracts of land." The section of fence in question terminated at a natural barrier (a creek) sufficient to turn cattle. Defendant sought to extend the line of this fence as the boundary line between the two properties. In reversing the trial court, the Supreme Court states in its opinion (p. 375) : "The mere acquiescence in the existence of the fence and the occupancy of the land to the north of it would not amount to an agreement that it was on an accepted boundary line. And the large area of the irregular parcel subtended by the fence and the creek to which it extended would go far to indicate that the builders of the fence were fixing a line 'for occupancy and not for title.' "

In *Hannah* v. *Pogue,* 23 Cal.2d 849 [147 P.2d 572], defendants appealed from a judgment holding that the boundary between plaintiff's land and defendants' land was an old fence. The trial court found that about the year 1917 the owners of these lands agreed that the fence should be the boundary. Defendants contended that there was no evidence of such an agreement, and that in any event it could not be given effect unless the boundary were uncertain or disputed. The Supreme Court in its opinion at page 856 stated: "It is the rule, however, that the court may infer that there was such an agreement ensuing from uncertainty or a dispute, from the longstanding acceptance of a fence as a boundary between the lands of two owners." (Citing cases.) The court went on to say: "She [plaintiff] also testified that she knew of no agreement that the fence should constitute the boundary. This testimony does not necessarily rebut the inference that there was such an agreement, however, for the inference may be

made that an agreement was inherent in the long-standing acceptance of the fence as the boundary. [Citing cases.] The courts have recognized such boundaries because the early surveys in the state were most uncertain, and in later years the monuments and landmarks they described could not be found. (See Loeb, *The Establishment of Boundary Lines by Practical Location,* 4 Cal. L. Rev. 179.) In the present case the boundary lines could not be ascertained from the early surveys, for the monument determining the northern end of the boundary and most of the other landmarks cannot be found. Given the difficulties of fixing the boundaries anew according to the old surveys, the trial court properly recognized a line that has served for many years as the practical boundary.

"The trial court decided that this boundary was settled by agreement in 1917, apparently because this year marked the acquisition of the property by the Hannahs and their acceptance of the fence as a boundary. It is unnecessary to decide whether on this evidence the agreement can be assigned to this particular date, for the precise date of agreement is immaterial in view of the acceptance of the fence as a boundary over a long period of years."

In *Nusbickel* v. *Stevens Ranch Co.,* 187 Cal. 15, 16 [200 P. 651], the rule is stated as follows: "When two adjoining owners of land, being *uncertain* as to the true location of the boundary line between their contiguous land, 'agree upon its true location, *mark it* upon the *ground,* or build up to it, *occupy on each side up to the place* thus fixed and acquiesce in such location for a period equal to the period of the statute of limitations, or under such circumstances that substantial loss would be caused by a change of its position, *such line becomes, in law, the true line* called for by the respective descriptions, *regardless of the accuracy* of the agreed location, as it may appear by *subsequent measurements.*' [Citations.]" (Italics added.) (*Carr* v. *Schomberg,* 104 Cal.App.2d 850, 857 [232 P.2d 597]; *Morris* v. *Vossler,* 110 Cal.App.2d 678, 682 [243 P.2d 43]; *Mello* v. *Weaver,* 36 Cal.2d 456 [224 P.2d 691].)

The *object of the rule* as stated in the cases, is to secure repose, to prevent disputes concerning boundaries, and make title permanent and stable. (*Cavanaugh* v. *Jackson,* 91 Cal. 580 [27 P. 931]; *Mello* v. *Weaver, supra,* 36 Cal.2d 456, 460.)

Appellant contends there is no evidence at all that a correct survey could not have located the boundary. It contends

that: "If it be true, that the purpose of the fence was to settle an uncertainty that then existed in the minds of the parties there is no evidence to support such a contention and the findings of the Court dispute that contention because the Court specifically found, that while the fence had been built for more than 60 years, the uncertainty existed for 'more than 47 years.' "

The finding does not limit the uncertainty to 47 years or constitute a determination that it did not exist for the entire 60 years. There seems to be no direct evidence concerning the state of the respective minds of the then owners at the time the fence was built. The inference concerning purpose hereinabove discussed would therefore apply. In *Hannah* v. *Pogue, supra,* 23 Cal.2d 849, 857, the court said: "It is unnecessary to decide whether on this evidence the agreement can be assigned to this particular date, [1917] for the precise date of agreement is immaterial in view of the acceptance of the fence as a boundary over a long period of years."

In *Mello* v. *Weaver, supra,* 36 Cal.2d 456, 460, the court said: "A dispute or controversy is not essential, [citing cases], but it may be evidence of the existence of a doubt or uncertainty. . . . The fact that an accurate survey is possible is not conclusive of the question whether a doubt existed as to the location of a common boundary. Thus the doubt may arise from a believed uncertainty which may be proved by direct evidence or inferred from the circumstances surrounding the parties at the time when the agreement is deemed to have been made [citing cases]; and if in good faith the parties resolve their doubt by the practical location of the common boundary it will be considered the boundary called for by the deed." (Citing cases.)

Respondents contend the present dispute concerning the true boundary is indirect evidence that there may have been uncertainty concerning the true boundary at an earlier time and the agreement to treat the fence as the true boundary can be inferred from the prolonged acquiescence of the parties. It is not necessary that the agreement between the parties be an express one. It may be inferred or implied from their conduct, especially where the condition is acquiesced in for the period of the statute of limitations. (*Wheatley* v. *San Pedro etc. R. R. Co.,* 169 Cal. 505 [147 P. 135]; *Vowinckel* v. *N. Clark & Sons,* 217 Cal. 258, 260 [18 P.2d 58].)

Respondents, being the plaintiffs herein, carried the burden

of proof. The trial court found they had sustained this burden concerning proof relating to the fence. Our attention has not been called to any direct evidence as to why this fence was placed where it was. Respondents suggest that it was built at a time when the first surveys were still sufficiently recent that the corners and markings could yet be accurately identified upon the ground. This is a most logical inference. If we are to take judicial notice of the common practices of mankind we must assume, under the circumstance of coterminous parcels belonging to different owners that the primary purpose of building such a fence was to delineate the common boundary. While this assumption does not under our code definition rise to the stature of a presumption it would seem at least to merit the classification of a compelling inference. Our attention has not been called to any evidence as to whether the owners of Section 13 or those in Section 24 built the fence or whether it was jointly done.

In *Morris* v. *Vossler, supra,* 110 Cal.App.2d 678, 682, the court sets forth the five essential elements necessary to establish an agreed boundary as follows: (1) An uncertainty as to the true position of the boundary; (2) an agreement to establish a common boundary; (3) marking or building up to the agreed boundary; (4) occupation of the real property to such line; and (5) acquiescence in the line thus established for a period equal to the statute of limitations. These five points would, of course, apply only in those cases where it could not be inferred that the parties knew where the line actually was and built the fence, among other reasons, to monument the boundary line.

The weight of authority, as we have shown, is that under a factual situation such as we have here if we are to indulge in an inference of uncertainty as to location of the boundary, an agreement to resolve this uncertainty may also be implied from the construction of the fence for the apparent purpose of marking the boundary and by the subsequent acquiescence in its location for a period of 60 years. No buildings are involved here so point 4 is inapplicable other than as to the "marking" which is fulfilled by the presence of the old fence. There is no dispute that respondents occupied and farmed the disputed parcel up to the fence and that this continued over a period of from 47 to 60 years—a period far exceeding any involved statute of limitations. No evidence has been called to our attention tending to refute this acquiescence. No proof has been pointed out of any disagreement

or dispute over the location of the fence over all the years after it was built and up to the point where defendant herein acquired the property and built the new fence. We therefore find ample and competent evidence to support a finding that the fence marked either the surveyed boundary line or a line fixed by agreement and by acquiescence for a time much longer than the statutory period.

Having found for respondents on their first two points there can remain no issue as to adverse possession.

The judgment is affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied March 28, 1966, and appellant's petition for a hearing by the Supreme Court was denied May 4, 1966.