[Civ. No. 20006. Third Dist. May 8, 1981.]

DERRILL L. McKINNEY et al., Plaintiffs, Cross-defendants and Appellants, v.
NORMAN D. KULL et al., Defendants, Cross-complainants and Respondents.

COUNSEL

A. Grant Macomber and Douglas G. Busch for Plaintiffs, Cross-defendants and Appellants.

Roger S. Mancini for Defendants, Cross-complainants and Respondents.

OPINION

BLEASE, J.—Plaintiffs, Derrill L. McKinney and Malinda McKinney, appeal from a judgment quieting title in defendants, Norman D. Kull and Peggy L. Kull, entered after the trial court found that a fence constituted an agreed boundary between their land parcels.

FACTS

The case was tried to the court on an agreed statement of facts and documents which show that plaintiffs and defendants own adjoining parcels which were once part of a larger property. The parcels were created by subdivision in 1948. The deeds in defendants' chain of title are tied to the southwest corner of section 32 and describe the disputed boundary by metes and bounds as a straight line connecting two monuments. The deeds in plaintiffs' chain of title are tied to the west quarter corner of section 32 by metes and bounds description but do not mention the monuments in defendants' deed.

In 1969, when defendants purchased their parcel, evidence of a fence existed along what they believe is the northern boundary of their property. The fence extended along a path which ended near a steel

monument at each end of the fence. The fence was constructed of wooden posts and trees and an examination of the fence in 1972 disclosed that the posts and trees had formerly been connected by wire. In 1969 a portion of the fence on what defendants believe is their northeastern boundary was still connected by wire and a garden has been maintained immediately south thereof, near their dwelling. The posts and trees along the northwestern portion had wire attached, but the wire had apparently either deteriorated or been cut, had fallen to the ground and had been removed. The fence had been constructed at least 20 years prior to 1972.

In 1972 defendants discovered that one of plaintiffs' predecessors in interest was conducting a survey of their property. Defendants, by letter, communicated to plaintiffs' predecessors in interest that it was defendants' belief that the fence was the true boundary between the two parcels. After having received no reply to this letter by the fall of 1973, defendants expended funds to reconstruct the fence along the entire boundary. In the fall of 1973 defendants reconstructed the fence by installing metal posts between the wooden posts and trees which existed and reinstalled wire connecting the metal posts and wooden posts. The reconstructed fence is in substantially the same location as the fence which had been constructed at least 20 years immediately preceding February of 1972.

The fence ends south of the present location of the monument called in defendants' deed as the northwest corner of their property and north of the point called as the southwest corner of the entire parcel, now divided into the three parcels owned by plaintiffs. Immediately north of the fenceline there exists a private road which plaintiffs use for access to their parcels. Defendants believed since they first occupied their parcel that the fence was the boundary between the parcels in issue. A person cannot see from one corner to the other along the common boundary because of the curvature of the terrain. Immediately south of the fence, in an area which has been occupied by defendants, there exists a pipe which carries water to defendants' property. Since 1969 defendants have made necessary repairs to the pipe, cleared brush and trees from around the pipe and finally, in 1977, replaced the metal pipe with a plastic pipe and buried it under the ground immediately adjacent to the location of the original pipe. There are no known objections to the fenceline or any boundary disputes among the parties' predecessors in interest or among the parties themselves until 1972.

The trial court found the fence, which had then been in existence some 28 years, constituted an agreed boundary under *Kraemer* v. *Superior Oil Co.* (1966) 240 Cal.App.2d 642 [49 Cal.Rptr. 869]. Plaintiffs argue this was error because the evidence of intent to mark the boundary and uncertainty as to its location was insufficient. We affirm the judgment.

## DISCUSSION

Preliminarily, we examine the standard of appellate review of a judgment founded upon stipulated facts.

■ Our scope of review is governed by the rule of conflicting inferences. "Where different inferences may reasonably be drawn from undisputed evidence, the conclusion of the jury or trial judge must be accepted by the appellate court." (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 254, p. 4245.) "[E]ven though all the facts are *admitted* or uncontradicted, nevertheless, if it appears that either one of two inferences may fairly and reasonably be deduced from those facts, there still remains in the case a *question of fact* to be determined by the [trier of fact].... In so far as the evidence is subject to opposing inferences, it must upon a review thereof be regarded in the light most favorable to the support of the judgment ...." (Italics added.) (*Mah See* v. *North American Acc. Ins. Co.* (1923) 190 Cal. 421, 426 [213 P.42, 26 A.L.R. 123], overruled on other grounds, *Zuckerman* v. *Underwriters at Lloyd's* (1954) 42 Cal.2d 460, 474 [267 P.2d 777].)

The rule of conflicting inferences has to do with inferences of *fact*, derived from other facts. It is sometimes "stretched beyond reasonable limits by mistaking questions of law for questions of fact." (6 Witkin, Cal. Procedure, *supra*, § 256, p. 4247.) And it is sometimes incorrectly limited to an ancillary role in the conflicting *evidence* rule which relates to review of *disputed* evidence and questions of credibility. Thus, in *Oliver & Williams Elevator Corp.* v. *State Bd. of Equalization* (1975) 48 Cal.App.3d 890 [122 Cal.Rptr. 249], the court said: "This case was submitted on a stipulation of facts with documents. There was no conflict in the evidence. No oral evidence was introduced. The trial court was not confronted with any question of the credibility of witnesses. Under such circumstances the issue becomes a question of law which can be resolved by an appellate court as well as a trial court." (*Id.*, at p. 894.) We disagree with that statement.

It is readily apparent that unless the parties stipulate to an ultimate fact, which is tantamount to the elimination of an issue from the case, agreed facts or events provide only the basis for an inference of other facts which transform the events into matters of direct legal significance. Where the parties stipulate to facts which form the basis for a further inference of fact, the factual inference to be drawn is not per se a question of law and the law controls only the reasonableness of the inference. (See 6 Witkin, Cal. Procedure, *supra*, § 255, p. 4247.) Where the inferences are conflicting, it is for the trier of fact to resolve the conflict in the absence of a rule of law specifying the inference to be drawn.

We turn to examine whether the inferences to be drawn from the agreed statement of facts support the trial court's judgment that the fence marks an agreed upon boundary.

■ "The requirements of proof necessary to establish a title by agreed boundary are well settled by the decisions in this state. [Citations.] The doctrine requires that there be an uncertainty as to the true boundary line, an agreement between the coterminous owners fixing the line, and acceptance and acquiescence in the line so fixed for a period equal to the statute of limitations or under such circumstances that substantial loss would be caused by a change of its position. It is not required that the true location be absolutely unascertainable [citation]; that an accurate survey from the calls in the deed is possible [citation], or that the uncertainty should appear from the deeds [citation]. The line may be founded on a mistake. [Citation.] [¶] The court may infer that there was an agreement between the coterminous owners ensuing from uncertainty or a dispute, from the long-standing acceptance of a fence as a boundary between their lands. [Citation.]" (*Ernie v. Trinity Lutheran Church* (1959) 51 Cal.2d 702, 707-708 [336 P.2d 525].)

The *Ernie* case establishes legal criteria by which to measure the reasonableness of an inference supporting the ultimate fact of an agreed boundary.

■ The stipulated facts support an inference of a long-standing acceptance of the fence as a boundary between the parties' lands. They show that defendants' chain of deeds marked the boundary inter alia by reference to monuments, but that the plaintiffs' chain of deeds did not, leading to an inference that there was some uncertainty as to the boundary line. The facts also show that the fence connects the approxi-

mate locations of the monuments described in defendants' chain of deeds, leading to an inference that the fence was built to mark the boundary. That the fence curves from monument to monument detracts from the straight line boundary descriptions in both chains of deeds, but the fact that there is no line of sight from monument to monument and the casual method of its construction tends to explain the inexactness in the builder's performance. The trial court could infer that the fence served the adjoining owners' purposes as a boundary and the parcel owners' uses of property adjoining the fence support the inference.

Plaintiffs claim that the evidence does not sustain an inference that there was any uncertainty as to the boundary at the time the fence was built. But the fact that there is no direct evidence of the purpose of the fence is not dispositive.

The court's comments in *Vella* v. *Ratto* (1971) 17 Cal.App.3d 737, 741 [95 Cal.Rptr. 72], are applicable here: "Where the boundary was established long before plaintiffs and defendant acquired their adjoining parcels, acquiescence for many years in such boundary line is substantial evidence that the fence was built to settle an uncertainty that existed in the minds of the then owners of the two parcels." Similarly, in *Kraemer* v. *Superior Oil Co., supra,* 240 Cal.App.2d 642, relied on by the trial court, there was no direct evidence of uncertainty as to the true line. The *Kraemer* court said, at page 652: "Our attention has not been called to any direct evidence as to why this fence was placed where it was. . . . If we are to take judicial notice of the common practices of mankind we must assume, under the circumstance of coterminous parcels belonging to different owners that the primary purpose of building such a fence was to delineate the common boundary. While this assumption does not under our code definition rise to the stature of a presumption it would seem at least to merit the classification of a compelling inference. Our attention has not been called to any evidence as to whether the owners . . . [of either parcel] built the fence or whether it was jointly done."

Plaintiffs' reliance on our opinion in *Finley* v. *Yuba County Water Dist.* (1979) 99 Cal.App.3d 691 [160 Cal.Rptr. 423] is misplaced. In that case there was a substantial question as to the purpose of the fence which was obviously not intended to follow a boundary line. (*Id.,* at pp. 700-701, fn. 7.)

The judgment is affirmed.

Paras, Acting P. J., and Carr, J., concurred.