[Civ. No. 2201. Fourth Appellate District.—March 22, 1938.]

JOHN A. TODD, Appellant, v. SENA M. WALLACE et al., Respondents.

 

John Preston King and Waldo E. Burford for Appellant.

Halbert & Stone, Farnsworth, Burke & Maddox and James K. Abercrombie for Respondents.

BARNARD, P. J.—This action was begun as a quiet title action but the issues were so narrowed that the only controversy at the trial was as to the location of the boundary line between the properties owned by the respective parties, and the plaintiff has appealed only from that portion of the judgment which fixes the boundary line between the two tracts of land.

The appellant is the owner of the northeast quarter of section 25, township 21 south, range 28 east, Mount Diablo base and meridian. The respondents are the owners of eighty acres of land lying immediately west of said land and being the east half of the northwest quarter of that section. About forty years before the trial of this case, at a time when these two parcels of real property were in separate ownership, a fence was erected somewhere near the true boundary line between these properties and extending the entire distance from the north to the south lines thereof. The north half of this fence was removed about the year 1915, but the south half remained until 1934, when it was removed by the appellant, although certain posts and post holes remained at the time of the trial. For about forty years and up to the time of the trial, a roadway has existed along the westerly side of this fence beginning at the north line of these properties and extending approximately three-fourths of the way to the south line thereof. The traveled portion of this road was about eight feet wide and was about two or three feet westerly from this fence. The road was a hard dirt road, well defined and was used by the parties to this action, their predecessors and the public generally. Beginning with a deed in 1896

the conveyances of the northeast quarter of the northwest quarter of this section, being the north forty acres of respondents' land, have contained a reservation for a right of way for a road twenty feet wide along the east line of said forty acres.

Many years before these parties acquired their respective lands rocks were piled along the fence which has been described, beginning near the center of the fence and extending some five hundred feet southerly therefrom, which pile of rocks remained up to the trial of this action. In 1915 a predecessor of the appellant set out orange trees opposite the north forty acres of the respondents' land. At that time the north half of the. fence was still in place and the last row of trees was set about twelve feet easterly from that fence. About the same time orange trees were set out on the north forty acres of respondents' land. The testimony is that there was a space from forty to fifty feet wide between these two orange orchards. This would indicate that respondents' predecessor set out the trees on that land from eight to eighteen feet westerly from the 20-foot strip which had been reserved for road purposes. Shortly after these orange trees were planted the north half of this fence was taken down and at a subsequent time the appellant's immediate predecessor repaired the south half of this fence. After the north half of the fence was removed the land immediately west of its former location was used by both owners, both as a roadway and as a place in which to turn farming implements. The respondents acquired their land in 1924 and the appellant acquired his land in 1928. In 1930 the respondents set out citrus trees on the south forty acres of their land, the easterly row of trees being about twenty-three feet west of the old fence, that part of which was then standing. They also installed a cement pipeline for a distance on the south forty, which was installed from eighteen to twenty-two feet west of the old fence and rock pile. While these improvements were being made the appellant appeared on the scene, inquired about what was being done, and on being told expressed complete approval. In 1934 the appellant tore down the south half of the fence which had remained in place until that time and built a new fence on a line twenty feet west of the old location. This brought on a controversy between the parties and this action followed.

The court fixed as the boundary the line of the old fence, finding that this boundary had been established by agreement and acquiesced in for many years. It also found that the appellant was the owner of an easement and right to travel over and use as a roadway and for turning implements, a strip of land from eleven to fourteen feet in width on the west side of the boundary thus fixed, which strip begins at the north line of respondents' north forty acres, and extends to a point six hundred feet south of the south line of that forty acres.

The appellant contends that the true boundary line between these properties was shown by the testimony of a surveyor employed by him and that the effect of the judgment entered is to transfer the westerly twelve to fourteen feet of his land to the respondents. It may be observed that aside from personal feelings there does not appear to be very much involved on this appeal. The appellant was given an easement to travel over, and use for turning, a strip of land varying in width from eleven to fourteen feet to the west of the boundary as fixed by the court. If the legal title to that strip had been given to the appellant it would still have been subject to a similar easement in favor of others since the roadway had been used in that location for so many years.

It is first argued that the evidence is not sufficient to sustain the judgment in that there was no definite evidence from which the court could find the exact location of the fence which formerly stood between these properties. In so far as the south half of this fence is concerned certain posts and post holes and the long pile of rocks remained at the time of the trial, and the location of that part of the fence was definitely fixed. A post still remained at about the center of the fence opposite the south line of the north forty acres of respondents' property. It is said that the north end of the fence was not definitely located, since one witness testified that at its north end the fence was "ten or twelve feet" from the trunks of appellant's nearest row of orange trees. However, the roadway was still there and there was testimony that it had been used up to the time of the trial and that it had remained in the same location during all of the years. The trial judge went out to the premises and, under his direction, measurements were taken by a county surveyor. It was about fifteen feet from the easterly edge

of the traveled portion of the road to the trunks of the nearest orange trees near the north line of these properties. There was testimony that the easterly edge of the traveled portion of the road was some two or three feet west from this fence as it formerly stood. The court fixed the location of this fence from the testimony and from these measurements and, while there is a conflict in the evidence, there can be no question that the exact location of the fence was rather clearly established.

■ It is next urged that the evidence is not sufficient to show any agreement that the line of the fence should constitute the boundary or that any uncertainty as to the location of the true boundary existed when any agreement was made. It is argued that the government survey of these lands was on file, was always available for use and that, therefore, there could have been no uncertainty with reference to the location of the boundary which could have been readily ascertained at any time. A surveyor employed by the appellant testified as to the survey made by him from which he gave what he considered to be the true boundary between these properties, being the line between the northwest quarter and the northeast quarter of this section. In making this survey he had with him a copy of the original field notes of the government surveyor who established the official corners of this section. He admitted that he was unable to find three of these corners. He accepted as the northeast corner of the section a pipe and rock which he found in that locality, although he did not know who placed them there and although they agreed with nothing in the notes of the government survey. He took a point at the northwest corner of the section which he admitted was not the northwest corner marked and described by the government surveyor; he took as the southeast corner of the section an oak post in a rock mound although this was on a bluff and the government surveyor had noted that at that corner the slope was so steep he could not set anything there, so he had set the post one chain south of the true corner; his north line of this section was 32.18 feet shorter than the same line described by the government surveyor; his east line was 29.8 feet shorter than the government line; his south line was twenty-three feet longer than the government line; and his west line was 75.8 feet shorter than the government line. He arrived at what the appellant

464

calls the true boundary line between these properties by bisecting the north and south lines thus taken by him and running a line north and south between the bisection points. A present uncertainty certainly existed as to the location of this boundary line and it may fairly be inferred from the evidence either that such an uncertainty existed at the time the fence was built and the road established or that the parties then attempted to place the fence on the line, and either did so or were unable to do so because of the uncertainty which then existed.

The evidence justifies the inference that the line on which the fence was built was accepted and agreed to by the parties as the boundary line. It was built approximately, if not exactly, on the middle line of that section. It is apparent from the government surveyor's field notes that this is a somewhat rough country and that the true line would be difficult to find if this is possible at all. The fact that the road was placed in that location so many years ago is a strong indication that that was considered the true line, especially since in the many deeds a right of way for such a road was reserved over the east twenty feet of the northeast quarter of the northwest quarter of this section. Not only was the road thus located on the ground but a fence was built in a corresponding position and rocks were piled along a large part of this fence. From the size and location of this rock pile it may be inferred that the rocks were taken from the land on both sides. The road was used for about forty years, half of the fence remained for the same time and the other half stayed for some twenty years. The respective parties improved their places and set out trees corresponding to the line of the fence and road and for some forty years no question was raised by the owner of either parcel of land.

It is well settled that in order to establish an agreed boundary line it is necessary to show an uncertainty or belief of uncertainty in the location of the line, an agreement, express or implied, fixing the line, an actual designation of the line upon the ground, and an occupation in accordance therewith. In *Roberts* v. *Brae,* 5 Cal. (2d) 356 [54 Pac. (2d) 698], the court said:

"However, in considering the nature and character of proof required to show such uncertainty and to establish such an agreement, the authorities are equally clear that in the ab-

sence of direct evidence, the same may be deduced from circumstances and may be inferred from the conduct of the parties, particularly from long acquiescence. In *Vowinckel* v. *N. Clark & Sons,* 217 Cal. 258, 260 [18 Pac. (2d) 58], it is stated: 'It is not necessary that the agreement between the parties be an express one. It may be inferred or implied from their conduct, especially where the condition is acquiesced in for the period of the statute of limitations. . . . "A presumption that an agreement formerly was made as to the location of a boundary line may arise from the fact that one or both the adjoining owners have definitely defined such line by erecting a fence or other monument on it and that both have treated the same as fixing the boundary between them for such length of time that neither ought to be allowed to deny the correctness of its location." ' . . .

"In *Clapp* v. *Churchill,* 164 Cal. 741, 745 [130 Pac. 1061, 1062], it is declared that 'the doctrine of an agreed boundary line and its binding effects upon the coterminous owners rests fundamentally upon the fact that there is, or is believed by all parties to be, an uncertainty as to the location of the true line. . . . This does not mean that the inference of an agreement arising from acquiescence does not support the added inference that the inferred agreement was based on a questioned boundary. The primary inference is of a valid pre-existing agreement and to be valid that agreement must have been based on a doubtful boundary line.' This is recognized in *Board of Trustees* v. *Miller, supra,* p. 106."

The following language from *Perich* v. *Maurer,* 29 Cal. App. 293 [155 Pac. 471], is appropriate here:

"The fence itself is a monument, visible and obtrusive, which has existed for forty years or more, that under the peculiar circumstances of this case is quite persuasive in favor of the claim of defendants. It is a fair presumption that this fence was originally placed upon the true line as then recognized and understood, and it is proper to assume, in the absence of evidence to the contrary, that when the fence was built, either that the contiguous owners had knowledge and information of the lines of the Sutter survey and acted accordingly, or that the true line was uncertain and by agreement it was fixed and marked by said fence. It is not surprising that this fence seemed so important to Boyd and to the trial judge. Its existence for so many years, the recog-

nition accorded it as the true boundary, the acquiescence of the respective owners in the location and the improvements made accordingly were rightfully regarded as important, if not decisive, considerations in the determination of a line otherwise obscure and uncertain. It is true that no one testified directly that the boundary was actually located on the ground or that there was uncertainty in reference to it, but such may be fairly inferred from the various facts disclosed, and we may invoke the principle announced in *Schwab* v. *Donovan*, 165 Cal. 360 [132 Pac. 447], and cases therein cited. This must be especially true since there is no clear and satisfactory showing here that the legal title is different from what is indicated by the fence.''

Under the rules set forth in these cases and others which might be cited we think the evidence which appears in this record, with the inferences reasonably to be drawn therefrom, supports the findings and judgment.

The judgment is affirmed.

Marks, J., and Jennings, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 19, 1938.