[Civ. No. 9507.   Third Dist.   Apr. 17, 1959.]

ORVILLE C. VICK, JR., et al., Appellants, v. FLORENCE S. GRASSER, Individually and as Executrix, etc., et al., Respondents.

Bowers & Sinclair for Appellants.

Robinson & Robinson, D. R. Robinson and Busick & Busick for Respondents.

SCHOTTKY, J.—This is an appeal by Orville C. Vick, Jr., and Loraine Vick from a judgment in an action brought by them against Florence S. Grasser, individually and as executrix of the estate of Leslie M. Grasser and H. S. Damerell and his wife, Cora Damerell.

The record shows that in 1946 the Vicks purchased some property in Placer County from the Grassers. Negotiations for the purchase of the property were conducted between the Vicks and one W. K. Graham, a licensed real estate broker, authorized by the Grassers to sell the property. The Grassers owned two pieces of adjoining property with a combined area of approximately two acres. The deed the Grassers executed conveyed only one of these two parcels to the Vicks. When the Vicks learned that only one of the two parcels had been conveyed they commenced this action. The cause went to trial on a first amended complaint. This alleged that the Grassers were the owners of two contiguous parcels of real property in Placer County; that in order to get from Parcel 1 to the county road it was necessary to traverse a roadway over Parcel 2; that this roadway had been used by the plaintiffs openly and adversely as a means of egress and ingress from the residence of the plaintiffs in Parcel 1; that in April, 1946, the Grassers employed Graham to sell the two parcels of land; that Graham, who became the authorized agent of the Grassers, orally agreed to sell the two parcels of land to the

plaintiffs for $5,500 and did agree to furnish a deed for the two parcels of land; that the Grassers, with knowledge of the representations of Graham, accepted the sum of $5,500, but, with intent to defraud plaintiffs out of Parcel 2, substituted a small strip of land 10 feet by 50 feet for Parcel 2; that if the plaintiffs had known of the substitution, they would not have purchased any of the property; that in furtherance of the scheme to defraud the plaintiffs of Parcel 2 the Grassers executed a deed to Parcel 1 and a small strip of land in place of Parcel 2 and delivered it to a title company who, acting as agent for the Grassers, recorded the deed without submitting it to the plaintiffs; that the deed was delivered to the Bank of America National Trust and Savings Association in Auburn, California, so that the plaintiffs did not discover the fraud until 1953; that the plaintiffs have been in possession of the parcels which were meant to be conveyed since 1946; that in furtherance of their fraudulent scheme to wrong plaintiffs the Grassers for a period of seven years failed to assert any claim, right, or title to Parcel 2; that on April 3, 1953, the Grassers notified the plaintiffs that they claimed the ownership of Parcel 2; that plaintiffs immediately demanded a deed to Parcel 2, but the Grassers refused to execute one; that the Grassers then executed a deed to Parcel 2 to the Damerells, who, with full knowledge of the plaintiffs' claim, accepted a deed to the property. The Vicks sought a declaration that they were entitled to a deed to Parcel 2 and in the alternative an easement over Parcel 2 and damages. A second cause of action sought compensatory and exemplary damages against the Grassers based on fraud. Leslie Grasser died prior to the trial of the cause and his wife, the executrix of his estate, was substituted for him.

At the commencement of the trial and prior to the introduction of any evidence plaintiffs' counsel advised the court and counsel that plaintiffs were relying on the mistake of the parties and were asking for reformation of the original deed to plaintiffs as a result of the mistake; that Damerell was a party to the action on the express condition that he had knowledge of the claim of the plaintiffs to the property, and was not therefore a bona fide purchaser; that in the event the court determined that Damerell was a bona fide purchaser, then and in that event plaintiffs were asking damages against Grasser as a result of the mistake and inability to reform the original deed.

Counsel for defendants then stated that the complaint

alleged fraud, not mistake, and the court stated that it had examined the complaint and that it sounded in fraud. The following then appears in the record:

"MR. SINCLAIR: I did not prepare the complaint, your Honor, or the amended complaint. The caption of the amended complaint is 'Reformation of Deed and for Declaratory Relief and for Damages.' There are two causes of action. I do not—there is, in the first cause of action, plead certain allegations of fraud and deceit and so forth. At the same time, I believe that it is sufficiently broad to cover the outline as I indicated to the Court would be, basically, the plaintiffs' case here.

"MR. ROBINSON: Well, your Honor, I don't want to belabor this point—obviously we've got a lot to do—but, Mr. Sinclair, is it your statement, in a friendly manner, just trying to arrange these things before we spend a lot of time thinking about things that aren't pertinent—is it your statement that you believe this states the cause of action for reformation on the ground of mistake? There's no mistake alleged anywhere in the complaint. I just want to know. You get my point?

"MR. SINCLAIR: As I have investigated and found the facts, that is my belief as to what happened. That is what we intend, or will attempt, to prove here—that there was a mistake, yes.

"MR. ROBINSON: We'll make our objections as to the evidence as it's produced, your Honor.

"THE COURT: Very well."

The case then proceeded to trial and continued for three days. The reporter's transcript, consisting of more than 400 pages, shows that the transaction surrounding the purchase of the property and the making of the deed was thoroughly gone into. There was substantial evidence to indicate that both the Grassers and Graham, the real estate broker, intended that the two parcels should be conveyed to plaintiffs. Mr. Graham was ill at the time of the trial and was unable to testify, but portions of his file which were introduced in evidence indicated strongly that the Grassers agreed to convey two parcels of property consisting of 2 acres, more or less, to the plaintiffs. During the course of the trial counsel for plaintiffs stipulated that the defendants Grasser were not guilty of fraud.

At the conclusion of the testimony, counsel for plaintiffs requested permission to amend the complaint to conform to proof. The record shows the following:

"THE COURT: In regard to the motion of plaintiff to amend the complaint to conform to proof, any objection? MR. ROBIN-

son: Yes, sir. I don't know what the amendment is. Mr. Sinclair: You know what the proof is. Mr. Busick: I don't know what proof he's got in he wants it to conform to. He hasn't stated it. Mr. Sinclair: Well, basically, as I understand it, your Honor—and for that purpose I didn't think it was necessary, but, as I understand it, the proof has shown a mistake. The Court: Well, perhaps, Mr. Sinclair, you had better prepare an amended complaint in writing, submit it, so that both the Court understands what your theory is and opposing counsel understand what the theory is, and the Court will automatically take it under submission.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"Mr Robinson: Gentlemen, can't we terminate this by stipulating that counsel for the plaintiffs will prepare an amended complaint; that they move the Court to—for permission to file that amended complaint; that in the event the Court allows its filing, it be deemed controverted, and the affirmative defenses which are raised in the answers on file here be considered as affirmative defenses to that complaint? That will be the stipulation  The motion is resisted, of course.  I'm merely trying to get the procedure organized so we can—does that sound satisfactory to the Court, your Honor, as a method of doing it? The Court: The mechanics sound satisfactory to the Court. Mr. Busick: That would be satisfactory to us. Mr. Bjelke: We also resist the——  Mr. Robinson: I might add to that that the decision on that motion be submitted to the Court for decision with the other motions and the decision of the case. The Court: Is that agreeable, Mr. Sinclair? Mr. Sinclair: Yes, your Honor. I have made the motion for the—for the amendment. The Court: But, I mean, to handle the mechanics of it in the manner that counsel has offered to stipulate? Mr. Sinclair: Oh, yes, I will—— The Court: In other words, you are to—— Mr. Sinclair: Prepare—— The Court:——prepare an amended complaint, and on motion to the Court on whatever ground that you've stated here to conform to proof. The motion, of course, is deemed to be denied by the opposing counsel, and if the motion is granted, then all of the various allegations in the complaint are deemed to be denied. Mr. Sinclair: Oh, yes, yes."

The proposed second amended complaint was filed with the clerk and submitted to the court. In it the first cause of action alleged that it was because of the mutual mistake of plaintiffs and defendants Grasser that plaintiffs did not receive the second parcel of land. In their second cause of action plain-

tiffs sought to recover the sum of $2,000 for money had and received. Plaintiffs again joined defendants Damerell, alleging that they subsequently purchased the second parcel of land knowing of the claim of plaintiffs thereto.

The court in its memorandum opinion and order denying plaintiffs' motion to amend stated:

". . . An examination of the two causes of action in the proposed amended complaint leaves no doubt but that the obligations on which they are founded are intended to be contractual as opposed to delictual in nature, as was the case in the first amended complaint.

"To now grant plaintiffs' motion to amend their complaint would be to permit them to change their causes of action and to set up entirely new and different causes of action. Plaintiffs' motion must be denied for the reason that an action commenced in tort cannot be amended so as to change the proceedings into an action in contract (*Hackett* v. *Bank of California,* 57 Cal. 335; 1 Cal.Jur.2d 624).''

The court then ordered judgment in favor of defendants and entered the following finding of fact: "I. That each and all of the allegations in plaintiffs' Complaint touching upon the matter of fraud claimed to have been practiced by defendants are found to be untrue."

This was the only finding made by the court, and from said finding the court concluded "that plaintiffs take nothing by their First Amended Complaint."

Plaintiffs have appealed from the judgment.

Appellants' first contention is that the court erred in not permitting the filing of the second amended complaint.

Section 473 of the Code of Civil Procedure authorizes the trial court, in its discretion, to allow amendments in furtherance of justice. The policy of great liberality in permitting amendments at any stage of the proceeding has been declared by our courts. (*Klopstock* v. *Superior Court,* 17 Cal.2d 13 [108 P.2d 906, 135 A.L.R. 318] ; *Price* v. *Mason-McDuffie Co.,* 50 Cal.App.2d 320 [122 P.2d 971] ; *Estate of Herbst,* 26 Cal. App.2d 249 [79 P.2d 139].)

As stated in *Richter* v. *Adams,* 43 Cal.App.2d 184, at page 187 [110 P.2d 486] :

"The rule that the amendment of a pleading immediately before or during a trial is not a matter of right but is placed within the sound discretion of the trial judge is too well established to need the citation of supporting authorities. It is equally well established that an appellate court will not

interfere with the action of the trial judge unless it clearly appears that there has been an abuse of discretion. It is also true that the exercise of this discretion must be sound and reasonable and not arbitrary nor capricious. To a certain extent the measure of the soundness of the discretion used must be found in the facts of each case.''

In the case of *Frost* v. *Witter*, 132 Cal. 421, the court said at page 424 [64 P. 705, 84 Am.St.Rep. 53] :

''On this point I find no general rule laid down by the decisions in this state. All that is said is, that great liberality should be used by the courts in allowing amendments (*Burns* v. *Scooffy*, 98 Cal. 276 [33 P. 86], and cases cited) ; and that the allowance of amendments is a matter within the discretion of the courts. (*Coubrough* v. *Adams*, 70 Cal. 378 [11 P. 634] ; *Lestrade* v. *Barth*, 17 Cal. 228.) And in practice the courts have been extremely liberal, —as, e.g., in *Heilbron* v. *Heinlen*, 72 Cal. 376 [14 P. 24], where the complaint was amended so as to describe a different tract of land from that described in the original complaint; or in *Walsh* v. *McKeen*, 75 Cal. 519 [17 P. 673], where the case was changed from an action at law to a case in equity; or in *Cox* v. *McLaughlin*, 76 Cal. 60 [18 P. 100, 9 Am.St.Rep. 164], where the change allowed was from an action on a special contract to an action on a quantum meruit; or as in *Castagnino* v. *Balletta*, 82 Cal. 256 [23 P. 127], where the change was from an action on a mechanic's lien to an action on the special contract, or in *assumpsit*; or in *Bogart* v. *Crosby*, 80 Cal. 195 [22 P. 84], where the principal debtors, who had been omitted from the original complaint, were brought in by amendment.''

■ In *Klopstock* v. *Superior Court*, 17 Cal.2d 13, the court said at page 20 [108 P.2d 906, 135 A.L.R. 318] :

''Of course, the court's power to permit amendments of pleadings is not unlimited. It has generally been said that an amendment may not be permitted where the effect of such amendment is to state 'another and distinct cause of action.' (*Dubbers* v. *Goux*, 51 Cal. 153, 155 ; Clark, Code Pleading, p. 502 et seq.) But this court has said, 'it is obvious that the unqualified way in which the rule is sometimes stated—i.e., that a new or different cause of action cannot be introduced by amendment—cannot be accepted. For the most common kinds of amendments are those in which complaints are amended that do not state facts sufficient to constitute a cause of action; and in these, and often in the case of new parties, a new cause of action is in fact for the first

time introduced. All that can be required, therefore (to use the language of Mr. Pomeroy), is that ''a wholly different cause of action'' shall not be introduced . . .' (*Frost* v. *Witter*, 132 Cal. 421, 424 [64 P. 705, 84 Am.St.Rep. 53]; 21 Cal.Jur. 197 et seq.) In determining whether a wholly different cause of action is introduced by the amendment technical considerations or ancient formulae are not controlling; nothing more is meant than that the defendant not be required to answer a wholly different legal liability or obligation from that originally stated. As the court says in the Frost case (*supra*, p. 426), for the purpose of determining whether amendment is possible, the 'cause of action' referred to as furnishing the test means only the legal obligation which it is sought to enforce against the defendant. Other courts have used almost identical language; the test is not whether under technical rules of pleading a new cause of action is introduced, but rather, the test is whether an attempt is made to state facts which give rise to a wholly distinct and different legal obligation against the defendant. The power to permit amendment is denied only if a change is made in the liability sought to be enforced against the defendant. (See *Harriss* v. *Tams*, 258 N.Y. 229, 242 [179 N.E. 476].)''

In Witkin, California Procedure, volume 2, at page 1612, it is stated:

''. . . An attorney does not necessarily know at the pleading stage exactly what his evidence is, and cannot always be sure of what it will prove. But if he produces evidence warranting a judgment in his favor within the general scope of the pleading, he should not be denied that judgment because of the proof of different grounds for recovery or defense. The modern law, following this view, has so minimized the effects of variance that it no longer constitutes a major obstacle to decisions on the merits. There are three main rules:

''First, *slight variance* may be disregarded as *immaterial* and even *substantial* variance may be disregarded or cured under the doctrine of 'theory on which the case was tried.'

''Second, most kinds of *material variance*, which would be ground for reversal if uncured, may be corrected by an amendment to conform to proof.

''Third, some departures greater than variance and constituting a *complete failure of proof* cannot be cured or corrected and call for reversal of the judgment.''

█ Applying the principles stated in the foregoing cita-

tions, we are convinced that the trial court erred in not permitting the second amended complaint to be filed. We believe that the trial court denied the motion to file the amended complaint because it was under the impression that the proposed amended complaint was setting up an entirely new and different cause of action and that therefore it had no right to permit said amended complaint to be filed. We believe that the trial court did have a right to permit the filing of the amended complaint and that it was an abuse of discretion to deny such permission. For basically both the amended complaint which it was sought to file at the conclusion of the trial and the complaint which was the basis of the trial were the same. The only difference was that in the complaint filed before trial fraud was the basis of the complaint and in the amended complaint sought to be filed at the conclusion of the case mistake was the basis of the complaint. However, both concerned the same transaction. The difference was that in the second relief was sought on the basis of mistake rather than fraud. Furthermore, at the outset of the trial plaintiffs' counsel informed the court that plaintiffs were relying upon mistake of the parties and not upon fraud. The trial proceeded and testimony was taken for three days. There was substantial evidence that both the Grassers and Graham, the real estate broker, intended that the two parcels should be conveyed to plaintiffs. Under such circumstances, when at the conclusion of the taking of testimony plaintiffs' counsel moved for leave to amend the complaint to conform to proof, the motion should have been granted. For as this court said in *Feigin* v. *Kutchor*, 105 Cal.App.2d 744, at page 748 [234 P.2d 264] : ''The administration of justice is not improved by slavish adherence to technical rules of pleading, but counsel and court should cooperate in having the pleadings so shaped that the controversy between the parties litigant may be fully and fairly determined upon its merits and in accordance with substantial justice.''

We believe that what was stated in *Marr* v. *Rhodes*, 131 Cal. 267, at page 270 [63 P. 364], is applicable. In reversing a judgment on the ground that the court erred in denying defendant's motion to amend his answer the court said :

''We think the court should have allowed the defendant to amend his answer to enable him to prove facts which would have constituted an offset or defense to plaintiff's demand as proposed; and if by reason of such amendment the plaintiff would have been taken by surprise and required further time

to prepare to meet the defense, the case could have been continued, or such terms imposed as might seem just under the circumstances. (*Stringer* v. *Davis*, 30 Cal. 321; *Guidery* v. *Green*, 95 Cal. 630 [30 P. 786].) In the latter case the court in its opinion says: 'It can very rarely happen that a court will be justified in refusing a party leave to amend his pleading so that he may properly present his case, and obviate any objection that the facts which constitute his cause of action or his defense are not embraced within the issues or properly presented by his pleading.' (See also *Burns* v. *Scooffy*, 98 Cal. 271 [33 P. 86].)''

While it is of course true that a trial court has a broad discretion in passing upon a motion to file an amended pleading and that an appellate court will not interfere with the action of the trial court unless it clearly appears that there has been an abuse of discretion, we do not believe the term ''judicial discretion'' is broad enough to sustain the court's order denying permission to file the second amended complaint. For as stated in *Jepsen* v. *Sherry*, 99 Cal.App.2d 119 [220 P.2d 819, 822], the discretion to be exercised in such a case is ''one controlled by legal principles and is to be exercised in accordance with the spirit of the law and with a view to subserving, rather than defeating, the ends of substantial justice.''

Appellants urge as a further ground for a reversal of the judgment that the said court did not find upon all of the issues presented to it by the pleadings and the proofs. This contention must be sustained.

The amended complaint alleges that Parcel 2 separates Parcel 1 from the county road, and that the only means of ingress and egress to Parcel 1 from the county road is over Parcel 2; that for more than seven years the plaintiffs have openly and adversely used the roadway over Parcel 2 to get from the county road to Parcel 1. The amended complaint then alleges that it is necessary for the use and occupation of Parcel 1 that plaintiffs have the use of the road over Parcel 2; that it has been in existence prior to the conveyance to the plaintiffs by Grassers and that it was in plain view of anyone inspecting Parcel 2.

The amended complaint alleges further that the Grassers, in furtherance of their original design to wrong the plaintiffs, sold the property in question to H. S. Damerell and Cora Damerell, and that the defendants Damerell, with full knowl-

edge that the plaintiffs had possession and claimed ownership of the parcel in question, accepted said deed from the Grassers.

These allegations were denied and so they were issues in the case, and evidence was introduced in support of said allegations and in support of defendants' denials thereof. But notwithstanding the fact that there were issues both as to the easement for a roadway and as to whether or not the Damerells were bona fide purchasers, the court made no findings whatever on these issues, but made only the single finding that all of the allegations in plaintiffs' complaint touching upon the matters of fraud were untrue.

As stated in 24 California Jurisprudence, at page 940: "It has been repeatedly affirmed that where a court renders a judgment without making findings upon all material issues of fact, the decision is against law, and constitutes ground for granting a new trial in order that the issues of fact may be determined, or for reversal upon appeal, provided it appears that there was evidence introduced as to such issue and the evidence was sufficient to sustain a finding in favor of the party complaining. . . ."

We conclude that the court erred in not permitting the filing of the second amended complaint and in not finding on the material issues of easement and bona fide purchasers. These errors require a reversal of the judgment.

The judgment is reversed with directions to the trial court to allow the filing of the second amended complaint and permit defendants to file such pleadings thereto as they may desire.

Van Dyke, P. J., and Warne, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.