[Civ. No. 11865. Third Dist. Jan. 19, 1970.]

ROBERT W. E. DUNCAN et al., Plaintiffs and Appellants, v.
HAROLD W. PETERSON et al., Defendants and Respondents.

608

## COUNSEL

Colley & McGhee and Milton L. McGhee for Plaintiffs and Appellants.

Goldstein, Barcéloux & Goldstein, P. M. Barceloux, Burton J. Goldstein, David J. McKeown, Albert E. Levy and Ralph Golub for Defendants and Respondents.

## OPINION

**PIERCE, P. J.**—This is a dispute over a 104-foot wide strip of land which lies adjacent to the true north-south line dividing two parcels of land. Plaintiffs Duncan are record owners of the east one-half and defendants Peterson of the west one-half of section 26[1] of a certain township in Butte County. The trial court quieted title to the disputed strip in the Petersons. On the Duncans' appeal we agree with their contention that a fence lying for many years along the west line of the land in question is a boundary agreed upon between the parties and their predecessors. Thus the judgment must be reversed with directions.

---

[1]Small portions of the two half-sections have been conveyed out at various times. That is irrelevant to this appeal. For convenience we will refer to them as full half sections.

· Plaintiff Robert Duncan acquired his half section from his father, who, in 1928, took through one Evers, a former record owner. The property has remained in the family since then. Defendants Peterson are brothers. They deraign title to the west half section through an aunt. The property was needed to them in 1963. They had leased it since 1958. The north-south length of Section 26 is 5,336 feet at the fence, 5,333 feet at the true center line. The fence mentioned above had been erected prior to 1922 and had formed the westerly perimeter of a fence enclosing (on the actual section lines, except for the west part) the Duncan lands. That west fence was generally considered as defining the boundary between the two properties and from (at least) 1923 to 1966 was so treated by those using and occupying both parcels; e.g., a roadway east of, and adjacent to, the fence was used by defendants and their lessees with the consent of plaintiffs but was considered plaintiffs' road. Also, during their occupancy, defendants constructed their irrigation facilities (toe-ditches) so they terminated at the fence. In 1963 or 1964 defendants asked and received permission from plaintiffs to build an airstrip (thereafter jointly used by the parties), the center line thereof corresponding to the former fence line. The airstrip is in the southerly portion of the subject property. The fence north of the airstrip remained in place.

In 1966 the defendants learned by accident that the line of the fence might not truly reflect the north-south center-section line. They had a survey made and confirmed that the true center line was 104 feet east of the fence. (The section, however, is apparently not square. Its easterly boundary is shorter than the western—its northern boundary greater than its southern.) After the survey was made defendants removed the fence. Plaintiffs' complaint sought a judgment quieting their title on two theories: adverse possession and acquiescence; also recovery of damages for wrongful removal of the fence.[2]

Only two findings were made by the trial court: (1) that all taxes on the subject property had been paid by defendants and their predecessors; and (2) that no taxes had been paid thereon by plaintiffs or their predecessors; also the subject property was particularly described by the court.

■ If, as we hold, the trial court failed to find on all material issues sustained by substantial evidence, such failure requires reversal. (*Vick* v. *Grasser* (1959) 169 Cal.App.2d 692, 702 [338 P.2d 223]; 2 Witkin, Cal. Procedure (1954), Trial, § 117, p. 1849.) The rule obtains unless there has been no miscarriage of justice. (3 Witkin, Cal. Procedure (1954), Appeal, §§ 107-109, pp. 2281-2283.) "Acquiescence"—an agreement to accept the fence as a boundary line between the two properties—had

---

[2]No proof was offered on this claim for damages.

been placed in issue by the complaint and proof thereof adduced. There was no finding on this.

Section 325 of the Code of Civil Procedure provides, as an element requisite to establishment of title by adverse possession, that the party seeking adjudication of such title prove that they "have paid all the taxes, State, county or municipal, which have been levied and assessed upon such land." ■ Throughout the years, all county taxes on these properties were assessed and paid under assessments designating the lands of each party by section references. Assessments had followed the true section and mid-section lines. That meant defendant had paid the taxes on the subject property. But, of course, the parties had no realization of this until 1966.

Those literal facts have no meaning where an agreed boundary is shown. When that occurs the new boundary effectively attaches to the respective deeds and, in legal effect, *becomes* the true dividing line between the properties. (*Young* v. *Blakeman* (1908) 153 Cal. 477, 482-483 [95 P. 888]; *Rose* v. *Silva* (1961) 189 Cal.App.2d 760, 766 [11 Cal.Rptr. 492] (hear. den.).) Requirements of proof of an agreed boundary have been judicially established. ■ There must be "an uncertainty as to the true boundary line, an agreement between the coterminous owners fixing the line, and acceptance and acquiescence in the line so fixed for a period equal to the statute of limitations or under such circumstances that substantial loss would be caused by a change of its position." (*Ernie* v. *Trinity Lutheran Church*, 51 Cal.2d 702, 707 [336 P.2d 525].) ■ Elements NOT necessary are: a written agreement, or an unascertainable true location. ■ Payment of taxes is not material as "[e]ach coterminous owner is deemed to have paid the taxes according to his deed." (*Ernie* v. *Trinity Luthern Church, supra*, at pp. 707-709, and cases there cited; *Rose* v. *Silva, supra*, 189 Cal.App.2d 760, 766-767.)

■ An agreement between coterminous owners may be inferred. The longstanding acceptance of a fence as a boundary between the parties' lands is strong evidence of such an implied agreement. (*Ernie* v. *Trinity Luthern Church, supra*, at p. 708; *Hannah* v. *Pogue* (1944) 23 Cal.2d 849, 856 [147 P.2d 572]; *Roberts* v. *Brae* (1936) 5 Cal.2d 356, 359 [54 P.2d 698], and see cases there cited; *Kraemer* v. *Superior Oil Co.* (1966) 240 Cal.App.2d 642, 648-651 [49 Cal.Rptr. 869].)

■ In the case before us acquiescence existed for at least 42 years and probably longer. Recognition of the fence as a boundary is inherent in the permissive use of the road and location of the airstrip, as well as in the other uses of the respective properties by the parties and their tenants. There is no evidence in the record contradicting or even suggest-

ing contradiction of an acceptance and agreement of the fence as the actual boundary.

As previously noted, absence of a pleaded and proved issue dispositive of the case necessitates reversal. The only remaining question is: Should reversal be with directions? The trial court deemed its finding on the issue of taxes the only one it needed to make. It is the sole point upon which defendants relied to defeat plaintiffs' action in the trial court; it is the sole issue upon which they rely on appeal. ■ Yet proof of a title by acceptance and acquiescence had been made, and we must assume that had defendants been able to produce any evidence disputing the evidence introduced, they would have done so. They have had their day in court. The sum of the evidence in the record permits of no other conclusion than that the parties and their predecessors had agreed upon the fence as their boundary.

The cases cited by defendants are distinguishable on their facts and therefore are not incompatible with the finding of an agreed boundary on the fence line which divided the property used by plaintiffs from that used by defendants.

■ A "reviewing court may make findings of fact contrary to or in addition to those made by the trial court . . . and may give or direct the entry of any judgment or order and may make such further or other order as the case may require. This section shall be liberally construed to the end among others that, where feasible, causes may be finally disposed of by a single appeal and without further proceedings in the trial court except where in the interests of justice a new trial is required on some or all of the issues." (Code Civ. Proc., § 909, based on former § 956a; *Ernie* v. *Trinity Lutheran Church, supra,* 51 Cal.2d 702, 709.) ■ This court finds that plaintiffs are the owners of the lands described in finding III. The judgment is reversed and the cause remanded with directions to enter judgment quieting plaintiffs' title in said lands against defendants; provided, however, that defendants shall have an easement to use jointly with plaintiffs that portion of the airstrip located on said lands.

Friedman, J., and Janes, J., concurred.