[Civ. No. 1285. Fifth Dist. May 20, 1971.]

RONALD P. VELLA et al.,
Plaintiffs, Cross-defendants and Respondents, v.
LEONARD B. RATTO, Defendant, Cross-complainant and Appellant.

### Counsel

Robert H. Haden, for Defendant, Cross-complainant and Appellant.

Price, Martin & Crabtree and E. Dean Price for Plaintiffs, Cross-defendants and Respondents.

### Opinion

**STONE, P. J.** —Plaintiffs and defendant in this quiet title action purchased their respective parcels of adjoining property in 1964. The chain of title to each parcel traces back to a common owner, R. F. Covert, who in 1914 conveyed to Paul Thede the parcel now owned by defendant. The parcel retained by Covert, which bounds the Thede parcel on three sides, has remained intact through various conveyances up to the time plaintiffs took title. After plaintiffs purchased the Covert parcel, they discovered that according to the description in the deed the fence line encroached 50 feet on one side of their property and 80 feet on another, comprising a total area of approximately two acres.

 Vellas brought this quiet title action, claiming title up to the survey lines, and Ratto cross-complained, seeking to quiet title according to the fence lines, under the doctrine of agreed boundary.

 The essential elements necessary to establish an agreed boundary are well settled: (1) an uncertainty as to the true position of the boundary, (2) an agreement to establish a common boundary line, (3) marking or building up to the agreed boundary, (4) occupation of the real property to such line, and (5) acquiescence in the line thus established for a period equal to the statute of limitations. (*Morris* v. *Vossler,* 110 Cal.App.2d 678, 682 [243 P.2d 43].) The last three elements are clearly established by direct evidence; it is the first two elements, uncertainty as to the true line and an agreement to establish the common boundary line, that present the troublesome questions.

Apparently the fence line which was in existence in 1964, when plaintiffs and defendant acquired their respective parcels, was established by Covert and Thede prior to 1920. Other than the original deed from Covert, the

common owner, there is no evidence of the circumstances surrounding the transaction in 1914 by which Covert carved the Thede parcel out of the whole. However, there is uncontradicted testimony that the fences which were in place when plaintiffs and defendant purchased their respective parcels in 1964, were in place in 1920. Mrs. Chatham, who with her husband purchased the property from Paul Thede in April of that year, testified that their property (now defendant's) was bounded by a wire fence on the north, east and south sides. She said the property was continuously farmed and cultivated according to the fence lines until they sold the property in 1945. In fact, she stated that they planted grape vines and walnut trees on the property which is in dispute, and that no one ever disputed the fence line as the boundary between the two parcels. Mr. and Mrs. Chatham sold the property to Mr. and Mrs. Smith, who were killed in an automobile accident, and Mr. and Mrs. Murrey purchased the property in 1947. They occupied the property until it was sold to defendant in 1964; during their 16 years of ownership the fences remained in the same position in which they were when the Chathams bought the property from Thede. The Murreys also cultivated all of the property up to the fences, until they sold to defendant.

Plaintiffs purchased their property (the Covert parcel) from Mr. and Mrs. Maliepaard. Mrs. Maliepaard testified that she and her husband purchased the property in 1941, that they owned it until 1964 when they sold to plaintiffs. She said the fence lines were in the same position when they purchased the property as they were when they sold to plaintiffs, and that they intended to convey to plaintiffs the property up to the boundary marked by the fence lines.

It appears from the court's memorandum and from the findings of fact that the trial court was of the opinion that direct evidence was necessary to prove uncertainty and an implied agreement to fix the boundary between the original grantor, Covert, and his grantee, Thede. Absent direct evidence, the court concluded there is no basis for an implied agreement fixing the boundary according to the fence lines.

■ A long line of cases hold that an implied agreement between co-terminous owners may be inferred from the circumstance of long-standing acceptance of a fence as a common boundary. (*Hannah* v. *Pogue,* 23 Cal.2d 849, 856 [147 P.2d 572]; *Roberts* v. *Brae,* 5 Cal.2d 356, 359 [54 P.2d 698]; *Kraemer* v. *Superior Oil Co.,* 240 Cal.App.2d 642, 652 [49 Cal.Rptr. 869]; *Duncan* v. *Peterson,* 3 Cal.App.3d 607, 611 [83 Cal.Rptr. 744].)

Thus the question is whether uncertainty as to the true line as well as *an implied* agreement to fix a boundary can be inferred from circumstantial

evidence of many years of acquiescence. We learn from the holding of the Supreme Court in *Clapp* v. *Churchill,* 164 Cal. 741 [130 P. 1061], a case upon which both respondents and appellant rely, that the element of uncertainty can be inferred from circumstantial evidence. At page 746, the court said: "This does not mean that the inference of an agreement arising from acquiescence does not support the added inference that the inferred agreement was based on a questioned boundary. The primary inference is of a valid pre-existing agreement and to be valid that agreement must have been based on a doubtful boundary line. But what is meant is that this inference of a doubtful boundary will not prevail against the proved fact to the contrary—namely, that there was no question or doubt or dispute between both parties over the boundary."

Some 30 years later, in *Hannah* v. *Pogue, supra,* 23 Cal.2d 849, the Supreme Court reiterated the holding in *Clapp,* by the following language at page 856: "The trial court found that about the year 1917 the owners of these lands agreed that the fence should be the boundary. Defendants contend that there is no evidence of such an agreement, and that in any event it could not be given effect unless the boundary were uncertain, or disputed. It is the rule, however, that the court may infer that there was such an agreement ensuing from uncertainty or a dispute, from the long-standing acceptance of a fence as a boundary between the lands of two owners." (See also *Todd* v. *Wallace,* 25 Cal.App.2d 459, 464 [77 P.2d 877].)

Where the boundary was established long before plaintiffs and defendant acquired their adjoining parcels, acquiescence for many years in such boundary line is substantial evidence that the fence was built to settle an uncertainty that existed in the minds of the then owners of the two parcels. Apposite to the case at bench is the fact situation in *Kraemer* v. *Superior Oil Co., supra,* 240 Cal.App.2d 642, where there was no direct evidence of uncertainty as to the true line. The court said, at page 652: "Our attention has not been called to any direct evidence as to why this fence was placed where it was. . . . If we are to take judicial notice of the common practices of mankind we must assume, under the circumstance of coterminous parcels belonging to different owners that the primary purpose of building such a fence was to delineate the common boundary. While this assumption does not under our code definition rise to the stature of a presumption it would seem at least to merit the classification of a compelling inference. Our attention has not been called to any evidence as to whether the owners . . . [of either parcel] built the fence or whether it was jointly done."

■ There is an empirical basis for the rule that both uncertainty as to the true boundary and an implied agreement to settle the uncertainty by fixing a line, can be proved by circumstantial evidence; it frequently happens with the passage of time that original coterminous owners die and witnesses to the event also die or disappear. The rule is consonant with the judicially declared objective of the agreed boundary doctrine, namely, "to secure repose, to prevent strife and disputes concerning boundaries, and make titles permanent and stable." (*Kraus* v. *Griswold,* 232 Cal.App.2d 698, 705 [43 Cal.Rptr. 139], citing *Young* v. *Blakeman,* 153 Cal. 477, 482 [95 P. 888], and *Martin* v. *Lopes,* 28 Cal.2d 618, 623 [170 P.2d 881].)

Where there is circumstantial evidence of long usage and acquiescence, and no contradictory evidence, as in the case at bench, it is the duty of the court to make a finding predicated upon such circumstantial evidence. (*Duncan* v. *Peterson, supra,* 3 Cal.App.3d 607.) In short, to require direct evidence of uncertainty and agreement in every case is to defeat the purpose for the agreed boundary doctrine. When the choice is between a reasonable inference supported by circumstantial evidence, and a complete absence of evidence to the contrary, the inference, which bears the imprimatur of the Supreme Court (*Clapp* v. *Churchill, supra; Hannah* v. *Pogue, supra; Todd* v. *Wallace, supra*), is controlling over a vacuity. ■ The trial court had before it evidence of long usage and acquiescence, and no contradictory evidence. Consequently the evidence does not support the finding that there was no uncertainty as to the true boundary and no implied agreement fixing the boundary. (See *Hannah* v. *Pogue, supra; Kraemer* v. *Superior Oil Co., supra; Todd* v. *Wallace, supra.*)

The record is clear that the boundary had been acquiesced in for over 40 years before plaintiffs and defendant took title to their respective parcels of property. In the absence of contrary evidence, we believe the law compels a finding that there was uncertainty as to the true boundary at the time the original grantor and grantee fixed the property lines by an implied agreement.

The judgment is reversed.

Gargano, J., and Brown (G. A.), J., concurred.

A petition for a rehearing was denied June 16, 1971.